**MARCEL WATCH CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 83–11–01578.**

United States Court of International Trade.

June 19, 1992.

---

Freeman, Wasserman & Schneider, Patrick C. Reed, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, James A. Curley, Atty., Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, New York City, Edward N. Maurer, Office of Asst. Chief Counsel, U.S. Customs Service, New York City, of counsel, for defendant.

## OPINION AND ORDER

AQUILINO, Judge:

This action had been suspended under *Belfont Sales Corp. v. United States*, 11 CIT 541, 666 F.Supp. 1568 (1987), *reh'g denied*, 12 CIT 916, 698 F.Supp. 916 (1988), *aff'd*, 878 F.2d 1413 (Fed.Cir.1989), a test case which is now final. In that case, this court had found, among other things, that a quartz analogue watch or "QAW" does contain a watch movement when viewed in the light of *Texas Instruments Inc. v. United States*, 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979), *aff'd*, 620 F.2d 269 (CCPA 1980), *Texas Instruments Inc. v. United States*, 82 Cust.Ct. 287, C.D. 4811,

475 F.Supp. 1193 (1979), *aff'd*, 620 F.2d 272 (CCPA 1980), and *Texas Instruments Incorporated v. United States*, 1 CIT 236, 518 F.Supp. 1341 (1981), *aff'd*, 673 F.2d 1375 (CCPA 1982), but had concluded that such a timepiece was properly classifiable under Schedule 6 to the Tariff Schedules of the United States, specifically item 688.45, as opposed to TSUS item 715.05, upon which the defendant had relied in imposing duties. The courts in the last of those Texas Instruments cases had reached the same conclusion with regard to quartz digital watches.

The action at bar covers entries of wall clocks and alarm clocks, the electronic components of which are claimed in the complaint to be similar in all material respects to those of the QAWs which were the subject of *Belfont, supra*. After joinder of issue, this action was itself designated a test case within the meaning of CIT Rule 84(b) and removed along with eight other actions from the *Belfont* suspension disposition calendar.

### I

The plaintiff has now interposed a motion for summary judgment[1] on its first pleaded cause of action, including a statement pursuant to CIT Rule 56(i), which alleges, among other points:

5. The imported articles in issue in [the] first claim for relief are analog quartz clocks and are described on the commercial invoice as "quartz wall clocks."

6. The[y] ... consist of a case and a quartz analog element that measures more than 0.5 inches in thickness and less than 1.77 inches in width.

7. On liquidation, the[y] ... were classified under the provision for "Clocks: ... with clock movements measuring less than 1.77 inches in width," in item 715.15, ... TSUS ..., dutiable at the column 1 rate applicable to the cases, plus the column 1 rates applicable to the

---

1. The motion is accompanied by one for oral argument, which need not be granted, in recog-

nition of the quality of the written submissions on both sides.

movements, if such cases and movements had been imported separately.

\* \* \* \* \* \*

9. The quartz analog elements ... were deemed to be "clock movements measuring less than 1.77 inches in width," and the rate of duty assessed on the[m] ... was derived from item 720.02, TSUS ... [and] was 34 cents each.

10. ... [T]he quartz analog elements ... of the ... wall clocks are more than 0.5 inches in thickness, whereas the quartz analog elements ... in the *Belfont* case were less than 0.5 inches in thickness.

11. The quartz analog elements of the ... wall clocks do not incorporate a balance wheel and hair spring.

12. The quartz analog elements of the ... wall clocks are not constructed or designed to be wound and are not capable of winding or of being wound.

13. The quartz analog elements of the ... wall clocks are not constructed or designed to be rewound, either before or after 47 hours of operation, and are not capable of rewinding or of being rewound.

14. The quartz wall clocks in issue are electrical articles.

Whereupon the plaintiff prays that its merchandise be held properly classifiable under TSUS item 688.43 (1982) ("Electrical articles and electrical parts of articles, not specially provided for: ... Other") or, in the alternative, item 678.50 ("Machines not specially provided for, and parts thereof").

In response, the defendant admits outright or in substance the foregoing averments numbered 5, 6 and 11. It denies in whole or in part the remaining, quoted Rule 56(i) representations and also crossmoves for summary judgment, setting forth its own statement of alleged material facts not in dispute, to wit:

16. The imported quartz wall clocks contain clock movements that have no jewels.

17. The clock movements are assembled, and are equipped with dials and hands. The movements are not equipped with a main spring, and operate without winding or rewinding.

18. The clock movements are similar in all material respects to the watch movements that were the subject of *Belfont Sales Corp. v. United States....* However, the clock movements are more than 0.5 inches in thickness....[2]

19. The clock movement is valued over $2.25 but not over $5.00.

20. The imported clocks are electromechanical articles.

Careful review and consideration of the cross-motions, after years of exposure to contentious, even extraordinary, litigation concerning the QAWs[3], lead this court to conclude that the controlling issues raised herein are of law and not of fact and that summary judgment is thus appropriate for disposition of the first cause of action in this test case. *Cf.* CIT Rule 56(d) and *Texas Apparel Co. v. United States,* 12 CIT 1002, 698 F.Supp. 932 (1988), *aff'd,* 883

**2.** Plaintiff's reply to this averment is that the "government admits that the quartz analog clocks in this case are indistinguishable in any material respect from the merchandise in the *Belfont* decision", whereupon the defendant has moved to supplant it with the following declaration:

18. Quartz analog clock movements are similar in construction, except as to size, and operate on the same principles as quartz analog watch movements.

The motion to amend states (at page 3) that there are differences between quartz analog clock movements and watch movements.

The imported clock movements ... differ in size from the watch movements that were before the Court in the *Belfont* case. That

difference is sufficient for the movements in issue here to be considered clock movements under Headnote 2(c) to Schedule 7, Part 2, Subpart E of the Tariff Schedules.... The clock and watch movements thus differ in at least one material respect.

The plaintiff opposes the motion essentially on the ground that thickness is not a material factual distinction between this action and *Belfont.*

Whatever the merit of this position, the court, in the exercise of its discretion, will permit the defendant to change its moving papers—prior to adjudication. The motion to amend, as set forth hereinabove, is therefore hereby granted.

**3.** *Cf. D & M Watch Corp. v. United States,* 16 CIT ——, 795 F.Supp. 1160 (1992).

F.2d 66 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990), and cases cited therein.

## II

Cases of classification always resort, first and foremost, to the governing statutes. Subpart E of Part 2 of Schedule 7 to the TSUS covered "Watches, Clocks, and Timing Apparatus". Headnote 2(c) defined clock movement as "any movement or mechanism, other than 'watch movements' as defined in headnote 2(b), ... intended or suitable for measuring time".[4] As indicated, the merchandise at issue herein was classified by Customs under item 715.15 ("Clocks: With watch movements; or with clock movements measuring less than 1.77 inches in width"). That item provided for duties equal to the "column 1 rates applicable to the cases, plus the column 1 rates applicable to the movements", the latter of which the Service derived from item 720.02, TSUS, to wit:

> Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:
>
> > Measuring less than 1.77 inches in width:
> >
> > > Not constructed or designed to operate for over 47 hours without rewinding:
> > >
> > > > Having no jewels or only 1 jewel .......... 34¢ each[.]

Another statute, the Customs Courts Act of 1980, provides that such a decision of the Service is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such decision." 28 U.S.C. § 2639(a)(1).

In attempting to meet its burden, the plaintiff, understandably, considers *Belfont* controlling. Indeed, even with amendment of its initial response to plaintiff's statement of facts, the defendant agrees that

quartz analogue clock movements are similar in construction "except as to size" and operate on the same principles as QAW movements. On the other hand, the quoted reservation is significant, for the statute specifically differentiates clock movements from watch movement on the basis of size. And it has been held in a classification action such as this that

> the primary guide to the disposition ... is not judicial precedent, but rather, the tariff schedules themselves. The words of the tariff schedules, like the words of any statute "must be construed in context and the statutes must be harmonized, both internally and with each other, to the extent possible." ... It is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and in fulfilling [its] responsibility in interpreting legislation, [the court] must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy."

*Algoma Tube Corp. v. United States*, 9 CIT 418, 422, 1985 WL 25774 (1985) (citations omitted). In other words, however precise the statutory provisions (or nature of the goods), interpretation thereof still depends on context. Clocks and watches have the same function of measuring and "telling" time, but in the tariff schedules Congress chose to differentiate between them, as entireties and also between their movements.[5] When it did so for purposes of classification of the merchandise herein, winding (and rewinding) had been associated with watches since the 16th century, when the coiled steel spring as a motor for timepieces was invented, thereby leading to sizing small enough for a human wrist or apparel pocket. *Cf.* 14 McGraw–Hill Encyclopedia of Science and Technology 440 (4th ed. 1977); 1 E.H. Knight, American Mechanical Dictionary 569 (1882). However,

---

**4.** Headnote 2(b) defined watch movement as "a timepiece movement measuring less than 1.77 inches in width and less than 0.50 inch in thickness".

**5.** This court held in *Belfont* that the QAWs are possessed of a movement, and the court also so finds with regard to the clocks herein. *See*

Defendant's Statement of Material Facts Not in Dispute, para. 18; TSUS Sched. 7, Part 2, Subpart E, Headnote 2(c) ("clock movement [ ] means any movement or mechanism ... intended or suitable for measuring time") (1982) (emphasis deleted).

winding and rewinding have not necessarily been integral to clocks, which date almost to the moment of recorded history itself, from the clepsydra of Plato in 372 B.C. to the pendulum of 1000 A.D. to Big Ben's installment in the tower at Westminster in 1859.

When duties were imposed on the QAWs under items 716.27 and 716.29 (1980), it thus was to have been expected that the TSUS contemplated "not constructed or designed to operate for a period in excess of 47 hours without rewinding". The statute did not contemplate tiny batteries' oscillating quartz in ultrathin watchcases for acceptable periods, which fact was critical in *Belfont* [6], but the same cannot be said of the quartz analogue clocks in this action. On its face, the TSUS purview of clocks was broader than that of watches. One need look no further than to the horological fact that clocks run by electricity are almost as old as that kind of power itself or to the statistical suffixes to item 720.02, namely, 10 "Electric: Battery operated" and 20 "Electric: Other". In short, statutory provisions for watch movements, though possessed of identical language concerning rewinding, did not contemplate electrical operation. While this court must apply the letter of the law as enacted, its foundation may not be disregarded. *Cf. Kyocera Int'l, Inc. v. United States*, 2 CIT 91, 96, 527 F.Supp. 337, 340 (1981), *aff'd*, 681 F.2d 796 (CCPA 1982). As Congress covered clock movements more completely [7], this court is not at liberty to deem them electrical articles for tariff purposes. *Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). That is, the plaintiff has failed to overcome the statutory presumption of correctness of classification of its clocks under TSUS Schedule 7, Part 2, Subpart E.

### III

The foregoing conclusion, however, does not mean that the Service's determination automatically stands. In *Jarvis Clark Co. v. United States*, 733 F.2d 873, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984), the court of appeals considered the "dual burden" placed by 28 U.S.C. § 2639(a)(1) on a party plaintiff and concluded that this Court of International Trade has a duty to determine the proper classification, even when the alternative(s) proposed by the plaintiff [8] are held not appropriate:

... [T]he trial court cannot determine the correct result simply by dismissing the importer's alternative as incorrect. It must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative.... [T]he court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand.

733 F.2d at 878 (emphasis in original, footnote omitted).

The plaintiff states in its proffered facts herein, paragraph 13: the quartz analogue clock movements "are not constructed or designed to be rewound, either before or after 47 hours of operation, and are not capable of rewinding or of being rewound"; and paragraph 14: the quartz wall clocks are "electrical articles". The remaining question thus is whether, notwithstanding this court's conclusion that such goods were correctly classified under item 715.15, duties were properly assessed pursuant to

**6.** For an indication of the historical turning point for watches in this regard, volume 14 of the fourth edition of the McGraw–Hill Encyclopedia of Science and Technology (1977) continued to focus on the traditional movement components of mainspring, balance wheel and coil hairspring, while the fifth edition of that volume, published in 1982, began to mention technological advances in watches like mercury batteries, crystal oscillators, digital counters and liquid crystal displays.

**7.** *See Tariff Classification Study: Explanatory and Background Materials*, Sched. 7 at 166 (1960); U.S. Tariff Comm'n Pub. 103, *Tariff Schedules of the United States Annot.* 422 (1963) (item 720.02 *et seq.*).

**8.** To repeat, the plaintiff in this action presses classification as "[e]lectrical articles and electrical parts of articles, not specially provided for: ... Other" under item 688.43, TSUS or as "[m]achines not specially provided for, and parts thereof" under item 678.50.

that item on their movements. As indicated, Customs imposed the column 1 rate set forth at item 720.02, which subsumed "Electric: Battery operated". But, as the plaintiff points out, 1982 general statistical headnote 2(c) stated that annotations like 720.02–10 and –20 "are subordinate to the provisions of the legal text and cannot change their scope." The plaintiff further notes the

> government's argument is that statistical annotations appearing in the first, 1963 edition of the TSUS may be treated as "part of the legislative history." The rationale for this argument—that the 1963 TSUS was published "contemporaneously with the enactment of TSUS"— is tenuous. The TSUS was enacted in the Tariff Classification Act of 1962, which Congress passed on May 24, 1962. The Act authorized the President, by proclamation, to make the TSUS effective "at the earliest practicable date," but this was not until August 31, 1963. Meanwhile, the 1963 edition of the TSUS with its statistical annotations appeared on July 25, 1963. Thus, the 1963 statistical annotations were obviously not before Congress when it passed the Tariff Classification Act of 1962. Nevertheless, in cases in which resort to the legislative history is warranted, it would not be improper for a court to refer to the 1963 statistical annotations along with the remainder of the TSUS drafting history.

Plaintiff's Reply Memorandum, pp. 4–5 (footnotes omitted).

This court has done as the plaintiff suggests in concluding that clocks were within the intended purview of Schedule 7, but of course plaintiff's point is that under *Belfont* the phenomenon of winding/rewinding presents no ambiguity, thereby obviating any need to consider statutory background. At least the court can concur that the law is clear enough that duties were not assessable on plaintiff's merchandise according to item 720.02. The court cannot concur, however, that this conclusion renders duties under Schedule 6 appropriate.

Rather, item 720.14 covered "Other clock movements: ... Valued over $2.25 but not over $5 each". As to this alternative, the plaintiff properly points out that a superior heading cannot be enlarged by an inferior heading, citing TSUS general interpretive rule (c)(1), but, contrary to plaintiff's position, the quoted heading of item 720.14 was not, in fact, inferior to the subheadings of item 720.02, namely, "Measuring less than 1.77 inches in width" and "Not constructed or designed to operate for over 47 hours without rewinding". Rather, the heading of item 720.14 was co-equal to the first and superior to the second, subordinate therefore only to "Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon", which characteristics reflect the goods at issue (along with their valuation [9]). Hence, the court concludes that, pursuant to the dictate of item 715.15 that the duties owed equal the "column 1 rates applicable to the cases, plus the column 1 rates applicable to the movements", the entries of clock movements herein should have been liquidated under TSUS item 720.14 (1982).

## IV

The motion for summary judgment on behalf of the plaintiff and defendant's cross-motion for summary judgment must be, and each hereby is, granted in part and denied in part in accordance with the foregoing opinion, with judgment to enter thereon in favor of the defendant. However, before such entry, the parties are to confer as to disposition of plaintiff's remaining pleaded cause of action and to proceed thereon within 30 days of the date hereof.

So ordered.

---

9. On the question of valuation of the movements, see exhibit A to plaintiff's statement of facts.