**MARCEL WATCH COMPANY,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–**
**Appellee.**

No. 93–1194.

United States Court of Appeals,
Federal Circuit.

Dec. 8, 1993.

Patrick C. Reed, Freeman, Wasserman & Schneider, New York City, argued for plain-

tiff-appellant. With him on the brief was Bernard J. Babb.

James A. Curley, Atty., Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in charge, Intern. Trade Field Office. Also on the brief was Edward N. Maurer, Office of Asst. Chief Counsel, U.S. Customs Service, of counsel.

Before ARCHER, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Marcel Watch Company appeals from the judgment of the United States Court of International Trade granting in part and denying in part cross-motions for summary judgment on Marcel's challenge of the United States Customs Service's classification determination and duty assessment of merchandise imported by Marcel in 1982. *Marcel Watch Co. v. United States*, 795 F.Supp. 1199 (Ct.Int'l Trade 1992) (opinion and order). The trial court held that the merchandise at issue, consisting of quartz analog clocks with clock movements measuring less than 1.77 inches in width, is classifiable under Item 715.15 of the Tariff Schedules of the United States (TSUS) (1982) and dutiable at a combined rate consisting of the rate applicable to the clock movements as set forth in Item 720.14, TSUS, plus the rate applicable to the clock cases as set forth in Item 720.34, TSUS. We affirm.

## BACKGROUND

The merchandise at issue, described as "quartz wall clocks" having a quartz analog movement measuring over 0.50 inches in thickness and less than 1.77 inches in width, entered the United States on September 24, 1982. Customs classified the merchandise as "Clocks: With watch movements; or with clock movements measuring less than 1.77 inches in width" under Item 715.15, dutiable at "[t]he column 1 rate applicable to the cases, plus the column 1 rate applicable to the movements." Thus, the movements and cases of the imported clocks were constructively separated and the duties for those components were separately determined. Customs assessed a rate of 34 cents each for the clock movements under Item 720.02 and a rate of 11% *ad valorem* for the clock cases under Item 720.34. The entry was liquidated by Customs on November 5, 1982.

Marcel subsequently filed a protest with Customs challenging the classification of the imported merchandise. The protest was denied and Marcel paid the liquidated duties assessed. On November 1, 1983, Marcel commenced an action in the United States Court of International Trade contesting the denial of its protest.[1] 19 U.S.C. § 1514(a), 28 U.S.C. § 1581(a) (1988). Marcel claimed that the imported clocks were properly classifiable as "Electrical articles and electrical parts of articles, not specifically provided for: ... Other" under Item 688.43, TSUS (as added by Exec. Order No. 12371, 3 C.F.R. 196 (1982)), dutiable at a rate of 4.9% *ad valorem*, or in the alternative, as "Machines not specially provided for, and parts thereof" under Item 678.50, TSUS, dutiable at a rate of 5% *ad valorem*.

On cross-motions for summary judgment, the trial court affirmed the classification of the merchandise under Item 715.15, rejecting Marcel's argument that the imported clocks were not classifiable under the provisions of Schedule 7. In reviewing the applicable duties assessed pursuant to that provision, the trial court affirmed Customs' determination that the rate of duty on the clock cases derived from Item 720.34. However, it disagreed with Customs' determination that the duty rate on the clock movements derived from Item 720.02. Instead, the court concluded that the clock movements should have been liquidated under Item 720.14, the provision covering "Other clock movements: ... Valued over $2.25 but not over $5 each."

---

**1.** The action was designated a test case by the trial court. *See* U.S.Ct.Int'l Trade R. 84(b). The complaint also challenged in a separate count the classification of merchandise described as "quartz alarm clocks" imported to the United States on May 18, 1982. That merchandise is not at issue here.

Marcel now appeals from the judgment of the trial court affirming Customs' decision to classify the imported clocks under Item 715.15 and assessing duties thereunder at the rates set forth in Items 720.14 and 720.34. We have jurisdiction under 28 U.S.C. § 1295(a)(5) (1988).

## DISCUSSION

Our standards of appellate review regarding classification determinations are well settled. We review the trial court's grant of summary judgment for correctness as a matter of law. *See Lynteg, Inc. v. United States,* 976 F.2d 693, 696 (Fed.Cir. 1992). The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law subject to *de novo* review. *W.R. Filbin & Co., Inc. v. United States,* 945 F.2d 390, 392 (Fed.Cir.1991). Resolution of that issue generally entails a two-step process of (1) ascertaining the proper meaning of specific terms within the tariff provision and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error. *Stewart–Warner Corp. v. United States,* 748 F.2d 663, 664–65, 3 Fed.Cir. (T) 20, 22 (1984). In reviewing classification determinations, Customs' classification of imported merchandise is presumed to be correct and the burden is on a party challenging the classification to overcome that presumption. *See Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840, 7 Fed.Cir. (T) 110, 112 (1989).

The clock movement provisions of TSUS, Schedule 7, Part 2, Subpart E (1982) ("Watches, Clocks, and Timing Apparatus"), read as follows:

Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:

Measuring less than 1.77 inches in width:

Not constructed or designed to operate for over 47 hours without rewinding:

| | |
|---|---|
| 720.02 | Having no jewels or only 1 jewel |
| 720.04 | Having over 1 jewel |

Constructed or designed to operate for over 47 hours without rewinding:

| | |
|---|---|
| 720.06 | Having no jewels or only 1 jewel |
| 720.08 | Having over 1 jewel |
| 720.09 | If certified for use in civil aircraft |

Other clock movements:

| | |
|---|---|
| 720.10 | Valued over $1.10 each |
| 720.12 | Valued over $1.10 but not over $2.25 each |
| 720.14 | Valued over $2.25 but not over $5 each |
| 720.16 | Valued over $5 but not over $10 each |
| 720.18 | Valued over $10 each |

---

Marcel maintains that the clocks do not fall within Schedule 7 as a matter of law because their movements are not classifiable under either Item 720.02, as found by Customs, or Item 720.14, as found by the trial court. Specifically, Marcel claims that the clock movements are not classifiable under Item 720.02 because that provision requires movements less than 1.77 inches in width to be capable of being wound and rewound. It is undisputed that the clock movements of the merchandise at issue here do not involve winding and rewinding. Marcel argues that neither are the clock movements classifiable under Item 720.14 because that provision only covers clock movements greater than or equal to 1.77 inches in width. It is undisputed that the clock movements are less than 1.77 inches in width.

In support of its contention that the clock movements at issue are not classifiable under Schedule 7, Marcel relies on the decision of the Court of International Trade in *Belfont Sales Corp. v. United States,* 11 CIT 541, 666

F.Supp. 1568 (1987), which held that quartz analog wrist watches were not classifiable under the provisions of Schedule 7. Marcel argues that because the movements of the imported clocks are similar to the movements of the watches at issue in *Belfont* in all material respects except for size, *Belfont* precludes classification of the quartz analog clocks under Item 715.15.

The imported merchandise at issue in *Belfont* was collectively referred to as "quartz analog watch[es]." Customs classified the merchandise under Item 715.05, TSUS (1980) ("Watches"), which provides that duties are to be assessed on cases and movements separately. Accordingly, duties were assessed on the watch movements under Items 716.27 or 716.29, TSUS, depending on their width, and on the watch cases under Items 720.24 or 720.28, TSUS, depending on their composition. The importer in *Belfont* challenged Customs' classification determination, arguing that the watches were classifiable as "electrical articles" under Item 688.45, TSUS.

The court in *Belfont* first addressed the threshold issue whether the imported quartz analog watches contained "watch movements" according to Schedule 7. Upon concluding that they did, the court then addressed whether the watches were properly classified under Item 715.05 as determined by Customs. That issue turned on whether the movements of the watches could be classified under Schedule 7, because if they could not, then the watches themselves could not. *See* 11 CIT at 546, 666 F.Supp. at 1571–72.

The watch movement provisions of Schedule 7 (1980) consisted of Items 716.04–716.06, 716.10–716.44, and 719. The heading that governed Items 716.10–716.44 required that the movements be:

> Not adjusted, not self-winding (or if a self-winding device cannot be incorporated therein), and not constructed or designed to operate for a period in excess of 47 hours without *rewinding*. [Emphasis added.]

Item 719 contained a similar limitation that the movements be "constructed . . . in excess of 47 hours without rewinding."

In view of the "rewinding" restriction governing all of the pertinent watch movement provisions of Schedule 7,[2] the trial court concluded that those provisions were necessarily limited to movements that were capable of being wound and rewound. The court found that the movements of the imported watches did not meet that limitation because they were battery operated and thus did not require winding and rewinding. Because the movements could not be classified under Schedule 7, the court concluded that the watches themselves could not be classified therein. Instead, the court held that the watches were properly classified under Item 688.45 of Schedule 6, TSUS. The court's decision in *Belfont* was affirmed on appeal "for the reasons stated in that court's published opinion." *Belfont Sales Corp. v. United States,* 878 F.2d 1413, 1413, 7 Fed.Cir. (T) 99, 100 (1989).

Despite the undisputed fact that the imported clocks at issue in the instant case are similar in construction and operate on the same principle as the movements of the watches at issue in *Belfont,* the trial court below concluded that *Belfont* was not dispositive of the classification issue. The court determined that the clock movement provisions of Schedule 7 were broader in scope than the watch movement provisions and that the imported clocks were properly classifiable in Schedule 7. Accordingly, the court held that although certain of the clock movement provisions of Schedule 7 contain the identical "rewinding" restriction at issue in *Belfont,* those provisions in Schedule 7 nevertheless contemplate battery-operated, nonwinding movements. The court based that determination on its finding that in contrast to wrist watches, "winding and rewinding have not necessarily been integral to clocks, which date almost to the moment of recorded history itself." 795 F.Supp. at 1203. Additionally, the court considered the statistical

---

**2.** Items 716.04–716.06, governed by the subheading "Having over 17 jewels," were the only watch movement provisions not subject to a "rewinding" requirement. Apparently those items were not considered because the watches at issue in *Belfont* either had no jewels or did not have over 17 jewels.

annotations to Item 720.02 labeled "Electric: Battery operated" and "Electric: Other" as evidence that the clock movement provisions of Schedule 7 cover battery-operated movements.

■ We agree with the trial court that *Belfont* does not in and of itself preclude classification of the imported clocks within Schedule 7. However, we arrive at that conclusion by a route different from that taken by the trial court in reaching its decision. Resort to extrinsic aids in interpreting the provisions at issue is unnecessary where, as here, the statutory language clearly and unambiguously manifests congressional intent. *See Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788, 6 Fed.Cir. (T) 121, 124, *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Moreover, we may not resort to the statistical annotations to the TSUS in order to broaden the scope of the clock provisions subject to a "rewinding" limitation to include battery-operated movements that are not capable of being wound and rewound. The TSUS itself instructs that such annotations "are subordinate to the provisions of the legal text and cannot change their scope." General Statistical Headnote 2(c), TSUS (1982).

■ In resolving issues of statutory construction, we begin with the language of the statute. *See Lynteg, Inc. v. United States,* 976 F.2d 693, 696 (Fed.Cir.1993). The clock movement provisions of the superior heading "Clock movements, assembled ..." are subdivided into two inferior headings: "Measuring less than 1.77 inches in width" and "Other clock movements." The former inferior heading is further subdivided into two subheadings, both of which contain the identical "rewinding" restriction construed in *Belfont.* The government does not dispute that according to *Belfont,* the clock movement provisions subject to this restriction, Items 720.-02–720.09, are limited to movements that can be wound and rewound. We agree that under the authority of *Belfont,* the movements of the imported quartz analog clocks are not classifiable under Item 720.02 because they do not involve winding and rewinding as required by that provision.

■ However, unlike the watch movement provisions at issue in *Belfont,* not all of the clock movement provisions at issue here are subject to a "rewinding" restriction. Certain clock movement provisions of Schedule 7 fall under the heading "Other clock movements." The provisions subsumed under that heading, Items 720.10 through 720.18, are not governed by any limitation that the movements be capable of being wound and rewound. Accordingly, the court properly held that the movements were covered by one of the provisions falling under that heading.

In order for a clock movement to be properly classified under Item 720.14, it must come within the statutory description "Clock movements, assembled ...: *Other clock movements:* ... Valued over $2.25 but not over $5 each" (emphasis added). Marcel claims that the clock movements are not classifiable under that provision because the heading "Other clock movements" limits the applicability of Item 720.14 to movements greater than or equal to 1.77 inches in width. The government, on the other hand, argues that the heading "Other clock movements" is not limited to clock movements greater than or equal to 1.77 inches in width, but that it includes all clock movements coming within the description of the superior heading which are not covered by any of the provisions of the preceding inferior heading, Items 720.02 through 720.09.

Both parties find support for their interpretations in General Interpretative Rule 10(c) of the TSUS. Rule 10(c) sets out the so-called "rule of relative specificity" which provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it." The rule is a "judicial aid to the construction of a statute in order to conform with the intent of Congress." *F.L. Smidth & Co. v. United States,* 409 F.2d 1369, 1376, 56 CCPA 77, 86 (1969) (quoting *United States v. Simon Saw & Steel Co.,* 51 CCPA 33, 1964 WL 8553 (1964)). Application of the rule, however, is subject to two limiting considerations. First, "a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby." R. 10(c)(i). Second,

"comparisons are to be made only between provisions of coordinate or equal status, i.e., between primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading." R. 10(c)(ii).

Marcel claims that in determining the scope of the inferior heading "Other clock movements," Rule 10(c)(ii) requires that the heading be compared *only* with its coordinate inferior heading "Measuring less than 1.77 inches in width." Thus, Marcel contends that the heading "Other clock movements" means clock movements other than those measuring less than 1.77 inches in width, *i.e.*, movements measuring 1.77 inches or more in width. Under the interpretation proposed by Marcel, therefore, clock movements measuring less than 1.77 inch in width but which do not require winding or rewinding, *e.g.*, the movements at issue, are not covered by any of the clock movement provisions of Schedule 7.

Marcel's interpretation must be rejected because it fails to reconcile and give effect to all of the provisions of the rule of relative specificity. Marcel may not choose those rules that afford a favorable interpretation and ignore those that do not. *See* General Interpretative Rule 10(a), TSUS (1982) (interpretation of TSUS provisions "subject to the rules of interpretation set forth herein").

The interpretative approach proposed by Marcel disregards the clear language of Rule 10(c)(i), which explicitly recognizes that a superior heading can be limited by its inferior headings. *See Nissho–Iwai Am. Corp. v. United States*, 10 CIT 154, 641 F.Supp. 808 (1986); *see also* U.S. Tariff Comm'n, *Tariff Classification Study: Submitting Report* at 9 (Nov. 15, 1960) (stating that a superior heading can be limited by an inferior heading under the tabular system of the TSUS). Rule 10(c)(i) mandates that the first inferior heading "Measuring less than 1.77 inches in width" be read in conjunction with its two subordinate subheadings, both of which operate to limit the scope of the first inferior heading to those movements that are capable of being wound and rewound. Only after the first heading is so construed may it be properly compared with its coordinate heading

"Other clock movements" pursuant to Rule 10(c)(ii). In accordance with the governing interpretative rules, the heading "Other clock movements" must then be read as covering all clock movements that are described by its superior heading except those movements covered by the provisions of its coordinate heading "Measuring less than 1.77 inches in width." *Cf. Lynteg*, 976 F.2d at 697 (a residual heading covers articles not provided for in an accompanying coordinate *eo nomine* heading). Thus, the clock movements at issue, which measure less than 1.77 inches in width and which are not capable of being wound and rewound, are properly classified under Item 720.14, the most appropriate provision under the heading "Other clock movements."

This interpretation accommodates both aspects of General Rule 10(c), that which suggests limitation of a superior heading by its inferior headings, and that which requires comparison between provisions of coordinate status. The meaning of the first heading "Measuring less than 1.77 inches in width" is determined in part by its inferior headings, and the meaning of its coordinate heading "Other clock movements" is determined by comparing it with the meaning of the first heading. The choice of classifying the clock movements under Item 720.14, among the items enumerated under the heading "Other clock movements," Item 720.10–720.18, follows from the fact that the movements are "[v]alued over $2.25 but not over $5 each."

Alternatively, Marcel argues that the legislative history of the TSUS clock movement provisions contained in the *Tariff Classification Study* supports its restrictive reading of the heading "Other clock movements." We, however, do not consider such putative evidence of legislative intent to be persuasive in light of the clear language of the governing interpretative rules and the operative tariff provisions. An arguable indication of congressional intent in the *Tariff Classification Study* alone cannot overcome the clear meaning of the words of the statute. *See American Customs Brokg. Co. v. United States*, 433 F.2d 1340, 1341, 58 CCPA 45, 48 (1972).

Accordingly, we hold that the clock movements of the imported quartz analog clocks,

measuring less than 1.77 inches in width and not requiring winding and rewinding, are properly classified under Item 720.14. Consequently, we hold that the imported clocks are properly classified under Item 715.15.

## CONCLUSION

Marcel has identified no reversible error committed by the trial court in holding that the imported clocks are classifiable under Item 715.15 and that the clock movements are dutiable under the rate set forth in Item 720.14. We therefore affirm the trial court's grant in part of summary judgment in favor of the government.

***AFFIRMED.***