(C.D. 2436)

J. E. BERNARD & CO., INC., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 17, 1964)

*Wallace & Schwartz* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The issue raised by these seven protests, consolidated for purposes of trial, is as to the tariff classification of merchandise variously described in the protests, but which was identified on trial as reciprocating tools, called diamond files, made of steel and

having a biting surface, or cutting face, of diamond. The merchandise was assessed with duty at 15 per centum, as a manufacture of earthy or mineral substances, not specially provided for, not decorated in any manner, under paragraph 214, as modified.

In protest 60/27820, the merchandise is identified as "diamond bort mfrs.," and it was stated as assessed at "15% to 20% ad valorem." The claim made in the protest is that the correct rate is 5 per centum ad valorem under paragraph 214. There does not appear to be any provision for duty at the rate of 5 percent under paragraph 214. Moreover, no evidence was adduced by plaintiff, and no argument advanced, in support of classification of the involved merchandise under paragraph 214. The fact is that plaintiff's case constitutes an attack on the applicability of paragraph 214 to this merchandise. The merchandise of protest 60/27820 was assessed with duty under paragraph 214, the paragraph for which the protest makes claim, but at rates other than the claimed 5 per centum rate. Both because the protest is not specific as to the claim it makes, namely, 5 per centum under paragraph 214, and also because no evidence had been adduced and no argument was advanced in support of the claim, protest 60/27820 is overruled. The presumption that the collector's classification is correct has not been overcome as to the merchandise of that protest.

Protest 60/13763 claims classification under paragraph 352, as modified, at the rate of 20 cents per dozen. This protest is also overruled, for it does not state the same classification claim as that on which plaintiff's proofs and arguments rely. The presumption that the collector's classification is correct has not been overcome by any proofs in support of the protest claim for paragraph 352 classification.

Although the other five protests make claim to various duty rates, which are not always the same as the rates that are now asserted, these protests all claim classification under paragraph 362, which is the classification to which plaintiff's case is addressed. Such protests are sufficient, under section 514, to permit consideration of them on the merits. Inaccuracy as to the rate that is specified in a protest is not a fatal defect, provided there is correct identification of the claimed tariff provision. *Loblaw Groceterias, Inc.* v. *United States*, 22 CCPA 479, T.D. 47481.

The official papers were not introduced into evidence. The merchandise is described as illustrated by the diamond files, of various cuts and sizes, which are included in collective exhibit 1; also, the merchandise is described in the testimony of Mr. Robert E. Reid, manager of Hyprez Division of Engis Equipment Co., importer of the merchandise, and in an illustrated catalog and pricelist of Hyprez Division, Engis Equipment Co., introduced into evidence as exhibit 3.

Exhibit 2 is an assortment of steel files, similar in sizes to the diamond files of exhibit 1. The file surface, or cutting edge, of the files in exhibit 2 is an etched or notched metal face, whereas in exhibit 1, the abrading surface, or cutting edge, is made by diamonds bonded to steel.

Mr. Reid testified that the merchandise of exhibit 1 is bought and sold as diamond files. They are so described in exhibit 3. Diamond files, such as these, are variously described according to their shape, size, and use. It was Mr. Reid's testimony that "they are used to file on hardened materials, such as hardened steel, tungsten, carbide, or ceramics"; that the difference in use between these files and those in which steel is the only material, is that the diamond files "could work on harder material than some steel files," although both files would work in the same method.

It is clear, from the evidence of record, that these implements are commercially known as diamond files. The issue before us is whether they are within the meaning of the tariff provision of paragraph 362.

The competing provisions are:

Paragraph 362, as modified by T.D. 48093:

Files, file blanks, rasps, and floats, of whatever cut or kind:
    2½ inches in length and under_____ 20¢ per doz.
    Over 2½ and not over 4½ inches in length_____ 25¢ per doz.
    Over 4½ and under 7 inches in length_____ 35¢ per doz.

Paragraph 214, as modified by T.D. 51802:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip or granite):
    If not decorated in any manner:
    \*      \*      \*      \*      \*      \*      \*
    Other_____ 15% ad val.

Neither party argues for a commercial meaning that is different from the common meaning of the tariff term "files," as Congress has used it in paragraph 362. The common meaning of a tariff term is a matter of law, to be ascertained by the court with the aid of dictionaries, technical works, testimony, and such other aids as the court may deem appropriate. *United States* v. *Mercantil Distribuidora et al.*, 43 CCPA 111, C.A.D. 617; *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388; *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 CCPA 24, C.A.D. 209.

While in modern times files have usually been made of steel, with the cutting surface formed by etching or notching the steel, sometimes in lines so thin as to be almost invisible to the eye, it is historical fact

that files are an ancient tool. They have been made of stone, bronze, iron, and, perhaps, other materials. Diamond files are a relatively recent development in man's continuing inventive search for tools that will better cut, or abrade, the harder materials which modern technology has been developing.

Nevertheless, diamond files were known in 1930, and by that name. Webster's New International Dictionary, 1930 edition.

In the Encyclopedia Americana, volume 11, page 206, in an article on files, it is pointed out that the file properly is not a rubbing or abrading tool, but a cutting tool, the teeth of which point in one direction. A rasp functions by being rubbed back and forth. In the record before us, there is testimony that the action of the biting face of these diamond files is reciprocal, that is to say, the tool is operated by a backward and forward motion. (R. 9, 13.)

In appearance, too, as in the method of use, these diamond files seem to be within the definition of a rasp. In the Tariff Information Surveys on articles in paragraphs 128, 129, 130, and 131 of the Tariff Act of 1913, at page 91, there appears the statement that the "rasp cut differs from single and double cut in the respect that the teeth are made by a pointed tool called a punch, not by a chisel, and consists of points or burrs rather than lines or sharp ridges."

In Webster's New International Dictionary, second edition, "rasp" is defined as follows:

1. A kind of coarse file, on which the cutting prominences are distinct points raised by the oblique stroke of a sharp punch instead of lines raised by a chisel, as on the true file.

The diamond file in appearance resembles a rasp, that is, a coarse file, more nearly than it resembles a true file. Its cutting prominences are distinct raised points. To be sure, these points are not raised by the oblique stroke of a sharp punch. The points here are raised by bonding diamonds to the steel surface of the tool.

Are we to conclude that Congress intended to limit the *eo nomine* enumeration of paragraph 362 to files and rasps that would be constructed, in the years ahead, by exactly the technical processes usual in their manufacture in 1930? There is no evidence of such an intention.

It is well settled that tariff laws are made for the future and embrace new articles as they are developed, provided the new articles come within the particulars which the statute has established as criteria of the classification. While the meaning of an *eo nomine* provision is to be determined as of the date of enactment, when so determined the meaning will embrace subsequently created articles which fall within the definition. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669.

The primary use of a true file is to cut, and the primary use of a rasp, which is a coarse file, is to abrade.

* * * Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act. [*United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699, at p. 73.]

These diamond files actually are coarse files, or rasps, both in use and in size, shape, and the fact that they are constructed with points for reciprocal abrading action.

There is another well-established principle that influences our decision. In determining classification, an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627. For example, in *Voss Cutlery Co.* v. *United States*, 41 CCPA 42, C.A.D. 526, gold-plated letter openers were held dutiable as "knives by whatever name known," rather than as articles, composed wholly or in chief value of gold.

We are of opinion that these diamond files are dutiable as files, or rasps, "of whatever cut or kind," rather than as earthy or mineral substances manufactured, not specially provided for. They are files, or rasps, within the common meaning of the term, both in appearance and in use. To be sure, the points which are the distinguishing feature of a rasp, are created in these tools by a new technology which was unknown, or little known, in 1930. There is no evidence whatever that Congress intended to limit the term "rasp" to a tool with points made by the then method of manufacture. An improved rasp, with points made in a different manner, so as to be more efficient in certain applications, but used in the same manner as the 1930 rasp, is also a rasp for purposes of tariff classification.

Plaintiff, on trial, limited its protest claims to certain diamond files and abandoned its claim as to all other invoice merchandise. The diamond files to which the protest claims are limited are identified in the invoices, as follows: DLA 2 x 1, DLA 3 x 1, DLA 4 x 1, DLA 5 x 2, DLA 0.5 x 4, DLA 0.75 x 4, DLA 1 x 4, DLA 1, DLA 2, DLA 3, DLA 4, DLA T2, DLA T3, DLA T4, DLA R1, DLA R1.5, DLA R2, DLA R2.5 x R5, DLE 1, DLE 2, DLE 3, DLE 4, DLE 5, DLE 6, DLF 1, DLF 2, DLF 4, and DLF 6.

Protests 60/13763 and 60/27820 are overruled. Protests 60/7454, 61/12051, 60/4076, 61/2097, and 61/4493 are sustained as to the items above enumerated, and those protests having been abandoned as to all other merchandise, the protests are overruled as to such merchandise.

Judgment will be entered accordingly.