(C.D. 2622)

KAYSONS IMPORT CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 2, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Charles P. Deem* and *Avram Weisberger*, trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case is described on the invoice as "B/O Automatic Tooth-Brush, Operated by Three Flashlight Batteries, Remote Control System w/Battery Container and Brushes." It was imported from Japan at the port of Los Angeles on January 15, 1963, and was assessed with duty at 9 cents each and 19 per centum ad valorem under paragraph 1506 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649, as toothbrushes. It is claimed to be properly dutiable at 12½ per centum ad valorem under paragraph 353 of said tariff act, as modified, as articles having as an essential feature an electrical element or device.

The pertinent provisions of said tariff act, as modified, are as follows:

| Para-graph | Description of Products | Rates of Duty | |
| --- | --- | --- | --- |
| | | A | B |
| 1506 | Tooth brushes, whether or not the handles or backs thereof are composed wholly or in chief value of any product provided for in paragraph 31, Tariff Act of 1930_____ | 0.9¢ each and 19% ad val. | *** |
| 353 | Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for: | | |
| * | *     *     *     * | * | * |
| | Other (except * * *)_____ | 12½% ad val. | *** |

At the trial, Aaron D. Kay testified that he is the buyer and is directly in charge of the entire operation of Kaysons International or Kaysons Import, general merchandise importer, and is a salesman, member of the board of directors, and advisor of Jack Kay & Sons, distributor of domestic appliances and housewares. He is vice president and secretary of both companies. He has traveled in the Orient buying merchandise and throughout the United States selling it. He has become familiar with the use made of such merchandise through discussions with the people to whom he sells and knows the possible markets for such items. He has been familiar with the imported article since he bought it in October 1962 and has been familiar with comparable domestic items since about the same time. Almost every electrical appliance manufacturer in the United States whose line his firm carries has come out with an electrical toothbrush. He has seen them used and has demonstrated their uses.

A pictorial representation of a domestic electric toothbrush which the witness said looked like the imported article was received in evidence as plaintiff's illustrative exhibit 1. The article depicted has a box-like portion at the bottom from which protrude an article consisting of a shaft with a tip and a switch, and 4 articles resembling ordinary toothbrushes, but with shorter handles. The witness said that the article pictured has an electrical unit which plugs into an electric outlet, but that the imported one is battery operated and that the batteries are concealed in the bottom of the unit and attach to the motor with a cord or wire. The motor is apparently in the shaft. The toothbrush head fits onto the small tip at the end of the shaft. The four different toothbrush heads are interchangeable and will each fit onto the motor-driven unit. The purpose of including four in the set is so that all the members of the family can use the motor-driven unit and still have their own toothbrush heads. Although not so stated, it is obvious that either before or after the toothbrush head is attached, the shaft must be taken out of the cabinet for use in brushing the teeth. When the motor is activated, the portion of the unit containing the brush is caused to vibrate and the action back and forth brushes the teeth and massages the gums. The very rapid motion of the toothbrush massages the gums. The witness said that an ordinary toothbrush would have some massaging action, but that, when he brushed his teeth with one, he did not massage his gums as a therapy measure.

Mr. Kay testified that it would not be practical to use the toothbrush heads by themselves without using the motor operating unit because the handles were too short. He also stated that the toothbrush head and the motor unit could not be used without activating the motor because the small tip at the end of the shaft would snap off if any pressure were put on it or the plastic would break.

The witness has imported and sold toothbrush heads without the motor handle to replace used-up heads. They cost about 3 to 4 cents apiece. The total unit costs $1.50 f.o.b.

At the close of the trial, it was stipulated that the electric toothbrush involved herein has as an essential feature an electrical element or device, but there was no admission that the article was in chief value of metal.

Plaintiff claims that the imported article is "more than a brush" and, since it has as an essential feature an electrical element or device, it is properly classifiable under paragraph 353, *supra*. It is, of course, well settled that, in order to prevail, a plaintiff in a classification case must establish not only that the collector's action is erroneous, but that the claimed classification is correct. *Dorward & Sons Co. et al.* v. *United States*, 40 CCPA 159, 162–163, C.A.D. 512; *United States* v. *Ameris Trading Co.*, 41 CCPA 151, 153, C.A.D. 542 In order for merchandise to be classified under paragraph 353, *supra*, it must be wholly or in chief value of metal. In the instant case, there is no evidence to show what proportion of the import is metal nor the relative values of metallic and nonmetallic portions. There is no sample in evidence, and the court cannot determine from a photograph of something which the import is said to look like that it is in chief value of metal or any other material. Plaintiff cites *Bruce Duncan Company, a/c Sims-Worms* v. *United States*, 45 Cust. Ct. 85, C.D. 2202, where counsel agreed that the article was composed of a plastic body, an electric motor, contacts and switches of metal, and a bristle brush in circular form, and states that the instant merchandise is composed of comparable materials. There, however, the merchandise had been classified as household utensils in chief value of base metal and the classification thus implied a finding that base metal was present in chief value. The claim accepted this as its predicate. Naturally, counsel and the court directed their attention wholly to other issues. The case is not authority that an article can be presumed or assumed to be in chief value of metal when this was not an element of the collector's classification decision, when no sample is before the court, when Government counsel expressly refuse so to stipulate, and when there is no evidence on which to base a finding. The four toothbrush heads were worth about 4 cents each, out of a total value of the import of $1.50, and besides, the casing was alleged to be plastic, but the rest is silence. The court is not desirous of making a mountain out of the component material of chief value issue, when only a molehill of debatable controversy is really there, as we demonstrated in *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536. But, to resort to another proverb, neither can we find the forest unless we are shown the trees.

The instant protest would have to be overruled on the ground of failure to prove component material of chief value, if for no other reason.

In addition, we think that, so far as the record shows, the instant merchandise was properly classified as toothbrushes.

In *Fred Roberts Co.* v. *United States*, 46 Cust. Ct. 254, C.D. 2265, the imported article was described by the court as follows (p. 255) :

> * * * It consists in part of what might be termed a handle, made of metal, in form very much like the body of a cylindrical flashlight, holding three battery cells and having a switch conveniently located thereon. Attached to the handle is a head, made of plastic, housing an electric motor and some sort of gearing arrangement, which transmits the rotating force of the motor at a right angle to the handle and to a plastic circular disk, into which are set tufts of hair or bristles about an inch long.

Plaintiff claimed it was "more than a brush," that is, a battery-operated polisher of which a brush was only a part. The court held, however, that the article did not do anything but shine or polish shoes and was nothing more than a brush, although electrically operated. It was also concluded that the term "brushes" in paragraph 1506 was relatively more specific than the description "articles having as an essential feature an electrical element or device" in paragraph 353, the former being an *eo nomine* designation and the latter being a broad, general description.

Plaintiff in the instant case claims that the imported electric toothbrush is more than a toothbrush since allegedly it massages the gums as well as brushes the teeth. It is shown, as might be expected, that the vibratory motion of the article in use is unlike that imparted to a hand toothbrush by the user's arm. Whether the word "massage" applies accurately to the effect of the import on the gums and whether a hand-operated toothbrush can likewise achieve a "massage" are not really relevant issues. No electric brush, that in *Roberts*, *supra*, or any other, exactly duplicates the motion and effect of a hand counterpart. The issue is whether the involved articles are known commonly and in the trade and commerce of the United States as toothbrushes. *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422. Congress legislated for the future and is presumed to have intended to cover all forms of the article, including improved models not known in 1930. *J. E. Bernard & Co., Inc., et al.* v. *United States*, 52 Cust. Ct. 56, C.D. 2436; *United States* v. *L. A. Salomon & Bro.*, 22 CCPA 490, T.D. 47483. So, nowadays, we get vitamins with our bread and character with our whiskey. Bread is still bread and whiskey, whiskey.

The chief difference between the electric brush in the *Roberts* case and the electric toothbrush before us seems to lie in the fact that the

former was a single article containing the brush head, motor, and batteries, and was apparently used in that condition, whereas here the brush heads, motor unit, and battery container are separable parts and only one of the brush heads and the motor unit are used in brushing the teeth. There might be a question as to whether all four brush heads are indispensable parts. *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780, and cases cited. However, no claim has been made that the article is not an entirety.

A brush is defined as follows:

Webster's New International Dictionary, 1958 edition:

brush 1. A device composed of bristles, vegetable fibers, wire, or the like, set in a suitable back or handle of wood, ivory, metal, or the like, and used for cleaning, scrubbing, painting, etc.

Funk and Wagnalls New Standard Dictionary, 1956 edition:

brush 1. An implement made of bristles, hair, feathers, broomcorn, sea-grass, or other fibrous and flexible material, fixed to a handle or a back, and intended to be swept or rubbed over surfaces: for cleansing, furbishing, smoothing, applying colors or varnish, etc. * * * electric b. 1. A brush to which an electric current is applied.

The instant merchandise has more parts than are contemplated by the primary definition of brush, but one lexicographer does include a brush to which an electric current is applied (which would presumably have more parts). The article here is known, bought, and sold as an electric toothbrush.

In *Nestle-Lemur Company* v. *United States*, 37 Cust. Ct. 209, C.D. 1825, in a case involving a combination article consisting of a brush and sprinkler top, the court stated (p. 211):

It is noted that the quoted definition [from an earlier edition of Webster's], has a reference to the use of brushes, and, in the case of *Keer, Maurer Company* v. *United States*, 32 Cust. Ct. 441, Abstract 57959, we observed that, in a general way, there was a use connotation to the term in the sense that articles embraced by the term exhibited a "*brush*-ing" action in their use. There is no question, however, but that the term as used in the tariff act provision, hereinbefore quoted, is not a use designation but is an *eo nomine* designation, that is to say, the test of classification is not the use of the article, but its name. Under these circumstances, use, in the condition as imported, is not a necessary concomitant of articles classifiable as brushes; it is sufficient if, in the condition as imported, they respond to the name of "brush." * * * [Emphasis quoted.]

Since the combination articles also had the characteristics of sprinkler tops, they were held dutiable by virtue of paragraph 1559 under the highest rate provision, which was for brushes.

In the instant case, the article electrically operated, is called an electric toothbrush. (Although but recently invented, similar articles are widely sold and advertised in the United States as electric toothbrushes.) It is evident that the application of electrical operation to small articles in common use, such as various kinds of brushes, is going to make them more complicated in structure. If the buyer gets, for better or for worse, a dose of gum massage with every utilization of the article, that is part of the gain he derives or price he pays for living in 1966. The brush is still a brush. The article here, being known in common speech and to commerce as a toothbrush, is properly classifiable as such.

For the reasons stated, the protest is overruled, and judgment will be rendered for the defendant.