**NISSHO IWAI AMERICAN CORPORATION and Nike, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 97–1489.

United States Court of Appeals, Federal Circuit.

May 12, 1998.

San Francisco, CA, amicus curiae for Asics Tiger Corporation.

Before MICHEL, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Nissho Iwai American Corporation and Nike, Inc. (collectively "Nike") appeal from the judgment of the United States Court of International Trade sustaining the classification of certain athletic footwear under the basket provision subheadings 6402.91.80, 6402.91.90, and 6402.99.90 of the Harmonized Tariff Schedule of the United States ("HTSUS"), dutiable at 20% or at 90 cents per pair plus 20%. In rejecting the importers' arguments, the court determined that the footwear at issue could not be classified under subheadings 6402.91.40 or 6402.99.15, dutiable at 6%, which expressly exclude footwear containing "a foxing or foxing-like band." Because the Court of International Trade did not err in interpreting the tariff term "foxing-like band" as applying to athletic shoes having an externally visible band applied or molded at the sole and overlapping the upper, whether or not those shoes are constructed with a mid-sole, we affirm.

Michael Maxwell, Gruenfeld, Desiderio, Lebowitz & Silverman LLP, Los Angeles, CA, argued for plaintiffs-appellants. With him on the brief was James F. O'Hara, Stein, Shostak, Shostak, & O'Hara, Los Angeles CA.

Barbara M. Epstein, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, New York City, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Washington, DC. Also on the brief was Joseph I. Liebman, Attorney–in–Charge, International Field Office, New York City. Of counsel on the brief was Chi Choy, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City.

Stephen S. Spraitzar, Law Offices of George R. Tuttle, and George R. Tuttle, III,

## BACKGROUND

The athletic footwear at issue, imported in the late 1980s and early 1990s, are constructed with a "foot frame mid-sole" sandwiched between the outer sole and the upper of the shoes. At various points around the perimeter of the shoes, portions of the outer sole and the mid-sole overlap the upper to create a "wavy" band that substantially encircles the shoes. The outer sole overlaps the upper at the toe and arch of the shoes. The remaining overlap originates at the mid-sole.

Nike claims that the footwear should have been classified under either of two subheadings, 6402.91.40 and 6402.99.15, both of which expressly exclude "footwear having a foxing or a foxing-like band applied or molded at the sole and overlapping the upper." * A

* Since the relevant tariff provisions remained unchanged during the period of importation, we shall refer to the provisions of the 1990 HTSUS. Chapter 64 of the HTSUS covers "Footwear, Gaiters and the like; Parts of such articles."

Heading 6401 encompasses "Waterproof footwear with outer soles and uppers of rubber or plastics." Heading 6402, the heading relevant to this appeal, encompasses "Other footwear with outer soles of uppers of rubber or plastics."

"foxing" is a band of material, such as rubber, applied to the shoe or boot, as in a Converse All Star®, that overlaps and bonds the sole to the upper. It is undisputed that the athletic shoes at issue do not have a "foxing"; however, the United States Customs Service found that they had bands which were "foxing-like." Accordingly, it found each shoe to be within the exception and thus classifiable only in one of the three basket provisions (depending on the features of the particular shoe), each encompassing a variation of "footwear with outer soles and uppers of rubber or plastics" not otherwise classified.

In the Court of International Trade, Nike again argued that its shoes did not have a "foxing-like band" within the meaning of the tariff provisions, asserting that only shoes resembling the "traditional sneaker or tennis shoe" could have a "foxing-like band." Nike argued that the term does not apply to athletic shoes, such as the imports in question, that contain a visible mid-sole. The Court of International Trade was unpersuaded and held that the existence or non-existence of a mid-sole was irrelevant to the "foxing-like band" issue. On summary judgment, the court concluded that the wavy overlap created by the combined overlapping portions of the outer sole and mid-sole constituted a "foxing-like band" within the meaning of the tariff provisions. Nike appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

■ We review the Court of International Trade's grant of summary judgment "for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Guess?·Inc. v. United States*, 944 F.2d 855, 857, 9 Fed. Cir. (T) 111, 113 (Fed.Cir. 1991). Determining the proper scope of a classification in the HTSUS is an issue of statutory interpretation and thus a question of law. *See Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir.1993). Determining whether a particular imported item falls within the scope of the various classifications as properly construed is a question of fact. *Id.* Because the nature and use of the imported athletic shoes are not in dispute in this case, the resolution of this appeal turns on the determination of the proper scope of the relevant classifications. The specific issue before us is whether the "foxing-like band" exclusion in the tariff provisions applies to athletic shoes in which part of the "band" overlapping the upper is formed by a mid-sole rather than exclusively by the outer sole. We hold that it does.

Nike asserts once again that the term "foxing-like band" is applicable only to shoes resembling the traditional sneaker or tennis shoe and thus argues that the exception cannot apply to the modern day athletic shoe containing a mid-sole. According to Nike, athletic shoes that do not closely resemble the traditional sneaker cannot have a "foxing-like" band. Nike has not argued that the wavy band on its shoes is visually dissimilar to the band formed by a traditional foxing so as to be outside the exception.

The tariff provisions in question do not expressly identify the type of shoe that possess a · foxing-like band. Subheading 6402.91.40, for example, encompasses "footwear with outer soles and uppers of rubber or plastics" and having "uppers of which over 90 percent of the external surface area . . . is rubber or plastics *except* (1) *footwear* having a foxing or foxing-like band applied or molded at the sole and overlapping the upper" (emphasis added). On its face, the exception applies to any footwear otherwise within the subheading that has a foxing or foxing-like band so applied or molded. The applicability of the exception thus depends on undefined language. All that is clear is that the exception is not expressly limited to footwear resembling a traditional sneaker having a foxing or foxing-like band. It is undisputed that the term "foxing-like," unlike the term "foxing," has no common and commercial meaning. Thus, there is no relevant industry practice on which to rely. Instead, congressional intent must be gleaned from the statutory language itself and, given its ambiguity, the legislative history.

Seeking support from the legislative history, Nike relies on the following single paragraph of the Tariff Classification Study (TCS), published by the United States Tariff

Commission in 1960, which discusses the origins of the "foxing-like band" language in the Tariff Schedules of the United States (TSUS), the predecessor to the HTSUS:

> The parenthetical exception "except footwear having foxing or a foxing-like band applied or molded at the upper" in item 700.55 is designed to insure classification in item 700.60 [the basket provision] of a style of imported shoes with plastic coated uppers having the general outward appearance of the traditional "sneaker" or tennis shoe.

Tariff Classification Study, Explanatory and Background Materials, Schedule 7 (Nov. 15, 1960). Nike argues that this statement in the TCS clearly limits the exception to shoes bearing a close resemblance to the traditional sneaker that existed in the early 1960s and does not apply to modern day athletic shoes. Specifically, Nike asserts that the term "foxing-like" was meant to encompass only an injection molded shoe prevalent in the 1960s that did not use a foxing, but that was nonetheless nearly indistinguishable from the typical 1960s sneaker containing a foxing. Nike places significant emphasis on the TCS's use of the phrase "traditional sneaker," arguing that such a phrase does not encompass the broader category "athletic footwear."

Nike further argues that its position is supported by Customs' own guidelines published in Treasury Decision 83–116, which quotes the TCS's statement that the exception applies to shoes having the general outward appearance of the traditional sneaker or tennis shoe. Additionally, Nike asserts that Customs has permitted numerous athletic shoes to enter the United States without classifying them as possessing a "foxing-like band." None of Nike's arguments is persuasive.

An examination of the entire discussion in the TCS regarding the "foxing-like band" language places the cited paragraph in context and undermines Nike's arguments. The TCS, which was produced contemporaneously with the introduction of the term in question into the TSUS, is indicative of legislative intent. *See Lonza, Inc. v. United States,* 46 F.3d 1098, 1107 (Fed.Cir.1995) (looking to the TCS to interpret a term used in the TSUS and carried over into the HTSUS). The TCS discusses the history leading up to the current footwear classifications and describes the problems associated with the previous classification scheme:

> [Under the old scheme,] the three original statutory provisions have been made into 24 separate rate descriptions.
>
> The complete dependence of the original provisions for footwear on the component-material-of-chief-value principle of classification is, in itself, potentially a breeder of anomalous results. The various actions by which such provisions have been subdivided into 24 separate rate descriptions have not only introduced additional complexities and ambiguities, but they have also intensified the problems incident to the use of the component-material-of-chief-value principle for footwear classifications....

TCS, p. 17. The TCS explains that the previous tariff provisions were ineffective at levying higher duties on footwear competing with domestic manufacturers.

> In recent years, however, there have been imports of footwear which have the appearance and are in fact of a kind made by the domestic rubber footwear industry, but which by some relatively minor change in construction, have avoided classification for duty purposes under the tariff provisions [with the higher duties].[1]

---

[1] For example, in 1953 and 1954 certain footwear of the tennis shoe or sneaker type was imported. In all essential respects, this footwear had the characteristics of rubber-soled footwear with fabric uppers dutiable [at the higher rate]. However, a strip of expensive leather had been inserted between the inner and outer sole of each shoe with the result that such imports were classified under paragraph 1530(e) as fabric-upper footwear with soles composed "in chief value of leather."

TCS, p. 18.

According to the TCS, the addition of a general category of footwear with an exception for footwear with a "foxing or foxing-like band" simplified and replaced the then-existing complex web of tariff provisions. By distinguishing shoes based on the presence of a foxing or foxing-like band, the current tariff provisions prevented importers from avoiding high duties by a slight alteration of the composition of the shoes. The newly introduced general category was intended to

encompass imported footwear that did not compete directly with domestic manufacturers. The "foxing or foxing-like band" exception was inserted to capture footwear that did compete with the domestic footwear industry.

> Item 700.55 [the general category] is a "key" provision in that it bears the burden of describing certain types of footwear imported in significant quantities which fall within the broad scope of the superior heading but which are not directly competitive with the products of the domestic rubber footwear industry and should not be [dutiable at the higher rate].

TCS, p. 24. The TCS then states, in the paragraph quoted by Nike, that if the athletic footwear has a visible band formed by the sole overlapping the upper (such that it resembles the traditional sneaker or tennis shoe), it falls within the exclusion.

The TCS describes some of the types of rubber soled footwear intended to be encompassed within the general provision: thonged sandals, a rubber-soled shoe having an upper made of vinyl-coated fabric, molded plastic shoes, and certain women's dress shoes. However, shoes with the "general outward appearance of the traditional sneaker or tennis shoe" which were produced by the domestic footwear industry at that time were intended to fall within the exception and be dutiable at a higher rate. The TCS states that the shoes competing with the domestic rubber-soled footwear industry included "such types as tennis oxfords worn for exercise, recreation, and ordinary footwear in mild weather; lace-to-lace shoes, commonly called basketball shoes, but used also for other sports and gymnastics; and specialties designed for leisure, beach, and streetwear." Accordingly, the legislative history indicates that the exception applied to the broad range of rubber-soled footwear manufactured by the domestic industry. As indicated in the quoted passages, these shoes included sneakers, tennis shoes, basketball shoes, and similar footwear having a visible band formed by the sole overlapping the upper, i.e., having a resemblance to the foxing of the traditional sneaker or tennis shoe.

Treasury Decision 83–116 likewise undermines Nike's position. That decision states that footwear normally classified under the general provision, but which have a "foxing-like band," fall under the exception "whether or not the traditional 'sneaker' or tennis type." Regarding the statement that the shoes must possess the "general outward appearance" of the traditional sneaker or tennis shoe, T.D. 83–116 states that "[i]t is apparent that the distinguishing feature or the essence of this general outward appearance was the presence of *a visible outside foxing.*" Additionally, T.D. 83–116 notes that "casual footwear of the slip-on type" may contain a foxing or foxing-like band and concludes, "[c]onsequently, it follows that the exclusionary language is not directed solely to sneakers or tennis type shoes."

T.D. 83–116 reenforces our conclusion that athletic shoes that have a *visible* foxing-like band fall within the exception. Thus, consumer perception regarding the similarity of the imported athletic shoes to the traditional sneaker or tennis shoe is irrelevant. The relevant inquiry is not whether the *shoes* are similar to the traditional sneaker or tennis shoe, but whether the *band* is similar to the foxing found on the traditional sneaker or tennis shoe, i.e., whether the band is "foxing-like." Accordingly, the Court of International Trade properly discounted the relevance of Nike's evidentiary submissions professing to demonstrate that shoes with a footframe mid-sole do not appear like or similar to traditional sneakers. For example, the hypothesis tested in Nike's consumer survey, "that specific shoes are, or are not, seen as looking 'like' shoes which are accepted as prototypes of shoes constructed using 'foxing'," fails to address the critical question: whether the band on the shoes appears "foxing-like." Notwithstanding Nike's protestations, this analysis does not sweep all athletic shoes into the exception. Rather, the exception encompasses only those athletic shoes with a visible "foxing-like band" overlapping the upper. Thus, as Nike notes, many "joggers" and "running shoes" which do not possess any overlap from sole to upper fall outside the exception. We have considered Nike's other arguments and find them to be unpersuasive.

■ Nike challenges the decision of the Court of International Trade only on the

distinction between shoes with mid-soles and "traditional sneakers," which concededly do not possess mid-soles. Accordingly, because the court correctly held that shoes with mid-soles can possess a "foxing-like" band, it did not err in sustaining on summary judgment Customs' classifications of the imported athletic shoes.

## CONCLUSION

The Court of International Trade did not err in determining that the imported athletic shoes, which have a band formed by the outer sole and mid-sole overlapping the upper, are properly within the exception "footwear having a foxing or a foxing-like band applied or molded at the sole and overlapping the upper." Accordingly, the court did not err in classifying the imported shoes in the basket provisions under subheadings 6402.91.80, 6402.91.90, and 6402.99.90.

*AFFIRMED.*