**BAUSCH & LOMB, INCORPORATED,**
Plaintiff–Appellant,

v.

**The UNITED STATES,** Defendant–
Appellee.

**No. 97–1333.**

United States Court of Appeals,
Federal Circuit.

July 8, 1998.

Michael K. Tomenga, Neville, Peterson & Williams, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Jamie L. Boucher, McKenna & Cuneo, L.L.P, of Washington, DC.

Barbara S. Williams, Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, New York, New York, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, U.S. Department of Justice, Washington, DC; and Joseph I. Liebman, Attorney in Charge, In-

ternational Trade Field Office. Of counsel on the brief was Mark K. Nackman, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York, New York.

Before MICHEL, PLAGER, and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

This case requires us to answer the question of whether an electric toothbrush is properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS") as a "toothbrush" or as an "electromechanical domestic appliance." In the course of doing so, we have been asked by the trial court to clarify the circumstances under which summary judgment may be granted when there is a dispute over the proper classification. Because the Court of International Trade correctly adjudged the latter classification to be the proper one, *Bausch & Lomb, Inc. v. United States,* 957 F.Supp. 281, 19 ITRD 1216 (C.I.T.1997), and because we conclude that summary judgment is appropriate in these circumstances, we affirm.

## BACKGROUND

The merchandise at issue in this classification case is a battery-operated electric toothbrush sold under the trademark "Interplak." Appellant, Bausch & Lomb, Inc. ("Bausch & Lomb"), imports several different models of this product. For purposes of the present appeal it is sufficient to focus on the common elements of each. As described by the trial court, and admitted by Bausch & Lomb, the Interplak comprises three basic elements:

> one to four interchangeable plastic toothbrush heads;
>
> a detachable plastic handle containing a battery-operated motor and a compartment for two rechargeable batteries; and

a stand that incorporates a battery recharger.

*Bausch & Lomb,* 957 F.Supp. at 282.

Bausch & Lomb imported the subject merchandise into the United States between January 8, 1991 and August 12, 1992. Until February 6, 1991, the merchandise was classified by Customs as "[t]oothbrushes" under HTSUS Subheading 9603.21.00. On that date, however, Customs issued a Notice of Action reclassifying the Interplak as "[o]ther [electromechanical domestic] appliances" under HTSUS Subheading 8509.80.00. Despite their prior treatment as toothbrushes, Customs liquidated the subject merchandise as "[o]ther appliances." Bausch & Lomb filed a protest, claiming that the entries should continue to be classified as "[t]oothbrushes." Customs denied the protest, and Bausch & Lomb filed the present suit in the Court of International Trade under section 515(a) of the Tariff Act of 1930. *See* 19 U.S.C. § 1515(a) (1994).

Before that court, both parties moved for summary judgment. Finding no genuine issue of material fact, the trial court granted the Government's motion and denied Bausch & Lomb's, holding that, as a matter of law, the Interplak was properly classified as an appliance under 8509.80.00 of the HTSUS. Bausch & Lomb now appeals from that decision. We have jurisdiction over the final decision of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

### I.

Before reaching the merits of this case, we turn first to the procedural question raised by the trial court. The problem, as the trial court saw it, is created by this court's routine characterization of classification determinations as involving a two-step process.[1] As the trial court noted, the gener-

---

1. This line of decisions includes: *SGI, Inc. v. United States,* 122 F.3d 1468 (Fed.Cir.1997); *Midwest of Cannon Falls, Inc. v. United States,* 122 F.3d 1423 (Fed.Cir.1997); *Universal Elecs., Inc. v. United States,* 112 F.3d 488 (Fed.Cir.1997); *Intel Singapore Ltd. v. United States,* 83 F.3d 1416 (Fed.Cir.1996); *Casio, Inc. v. United* *States,* 73 F.3d 1095 (Fed.Cir.1996); *Nidec Corp. v. United States,* 68 F.3d 1333 (Fed.Cir.1995); *Medline Indus., Inc. v. United States,* 62 F.3d 1407 (Fed.Cir.1995); *Marubeni Am. Corp. v. United States,* 35 F.3d 530 (Fed.Cir.1994); *National Advanced Sys. v. United States,* 26 F.3d 1107 (Fed.Cir.1994); *Sports Graphics, Inc. v.*

al statement found in many of our cases is that, when there is a dispute over which of two or more tariff classifications particular merchandise falls under, the court analyzes the problem in two steps: first, construe the relevant classification headings; and second, determine under which of the properly construed tariff terms the merchandise at issue falls. *See, e.g., Universal Elecs., Inc. v. United States,* 112 F.3d 488, 491 (Fed.Cir. 1997). The first step of construing the tariff classification terms is denominated a question of law, *see id.,* while the second step is, under the usual iteration of the rule, referred to as a factual inquiry, *see id.* The trial court viewed this characterization of the two-step process as raising a logical and practical dilemma when deciding classification cases on summary judgment, because the second step seemed to overlap with the ultimate question of whether the merchandise was correctly classified under the statute.

The ultimate question in a classification case is whether the merchandise is properly classified under one or another classification heading. We have consistently viewed this as a question of law, *see Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994), because what is at issue is the meaning of the terms set out in the statute, *see Universal Elecs.,* 112 F.3d at 492 ("Questions such as these lie within the domain of the courts, for 'it is emphatically the province and duty of the judicial department to say what the law is.' " (quoting *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803))).

As the trial court noted, if the second step, viewed as focusing on the particular merchandise and where it fits in the statutory scheme, is taken as a question of fact, no party would stipulate to the other party's classification as factually correct, since "to do so would be to stipulate oneself out of court." *Bausch & Lomb,* 957 F.Supp. at 282. How then could summary judgment be appropriate, the trial court asked, if a prerequisite to

summary judgment is that there be "no genuine issue as to any material fact." Ct. Int'l Trade R. 56.

We appreciate the trial court's view, but we do not understand the two-step process to present a problem, certainly not a sufficient problem to warrant this court going *in banc,* which is what we must do if we wish to modify the long-standing existence of the two-step rule. In the first place, the Court of International Trade has not hesitated to decide classification cases on summary judgment when that was appropriate. *See, e.g., Nissho Iwai Am. Corp. v. United States,* 143 F.3d 1470, 1472–73 (Fed.Cir.1998); *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439, (Fed.Cir.1998); *A Classic Time v. United States,* 123 F.3d 1475, 1476 (Fed.Cir. 1997); *SGI, Inc. v. United States,* 122 F.3d 1468, 1469 (Fed.Cir.1997); *Celestaire, Inc. v. United States,* 120 F.3d 1232, 1232 (Fed.Cir. 1997); *Rollerblade, Inc. v. United States,* 112 F.3d 481, 483 (Fed.Cir.1997). This case is a perfect example.

In the second place, our recent cases have made clear that summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is. *See Nissho Iwai,* 143 F.3d 1470, 1472–73 ("Because the nature and use of the imported athletic shoes are not in dispute in this case, the resolution of this appeal turns on the determination of the proper scope of the relevant classifications."); *IKO Indus., Ltd. v. United States,* 105 F.3d 624, 626–27 (Fed.Cir.1997); *Rollerblade,* 112 F.3d at 483 ("[The parties] agree that none of the pertinent characteristics of the merchandise is in dispute, and thus the sole issue is a matter of properly interpreting the classification term at issue ... to determine whether the scope of that term is broad enough to encompass the items with the particular characteristics."); *Sports Graphics,* 24 F.3d at 1391. Understood in that manner, there is nothing inherently incompatible with the

*United States,* 24 F.3d 1390 (Fed.Cir.1994); *Marcel Watch Co. v. United States,* 11 F.3d 1054 (Fed.Cir.1993); *Lynteq, Inc. v. United States,* 976 F.2d 693 (Fed.Cir.1992); *W.R. Filbin & Co. v. United States,* 945 F.2d 390 (Fed.Cir.1991); *Digital Equip. Corp. v. United States,* 889 F.2d 267

(Fed.Cir.1989); *Simod Am. Corp. v. United States,* 872 F.2d 1572 (Fed.Cir.1989); *Stewart–Warner Corp. v. United States,* 748 F.2d 663 (Fed.Cir. 1984); *Childcraft Educ. Corp. v. United States,* 742 F.2d 1413 (Fed.Cir.1984); *Daw Indus., Inc. v. United States,* 714 F.2d 1140 (Fed.Cir.1983).

summary judgment process if the court construes the relevant (competing) classification headings, a question of law; determines what the merchandise at issue is, a question of fact; and then, if there is no genuine dispute over the nature of the merchandise, adjudges on summary judgment the proper classification under which it falls, the ultimate question in every classification case and one that has always been treated as a question of law.

In this case, the court properly exercised its authority and decided, based on undisputed facts characterizing the Interplak as described above, whether the merchandise was properly classified under the "Other appliances" subheading. *See Bausch & Lomb,* 957 F.Supp. at 289. We now consider if that conclusion was correct.

## II.

■ We start first with the competing tariff headings. Customs classified the Interplak electric toothbrushes as "Other appliances" under Subheading 8509.80.00 of the HTSUS, which provides:

8509 Electromechanical domestic appliances, with self-contained electric motor; parts thereof:

\* \* \* \* \* \*

8509.80.00 Other appliances ... [duty rate of 4.2% *ad valorem* ]

The plain language of Subheading 8509.80.00 covers electromechanical domestic appliances with self-contained electric motors—of which an electric toothbrush is undoubtedly one. This interpretation is supported by the *Explanatory Notes* under Heading 8509, which specifically classify "Electric tooth brushes" under that Heading, rather than under Heading 9603, as well as the *Explanatory Notes* under Heading 9603, which appear to limit that Heading to brushes "for" appliances, and not the appliances themselves. *See Lonza Inc. v. United States,* 46 F.3d 1098, 1109 (Fed.Cir.1995) ("While the *Explanatory Notes* do not constitute controlling legislative history, they do offer guidance in interpreting HTS subheadings.").

Bausch & Lomb does not dispute that this provision literally covers the Interplak. Instead, it contends that electric toothbrushes are more specifically provided for under HTSUS Subheading 9603.21.00 in light of the legislative history and prior case law of this court and its predecessor. Under General Rule of Interpretation ("GRI") 3(a) of the Harmonized Tariff System, according to Bausch & Lomb, the more specific *eo nomine* description "brush" in Heading 9603 is preferred to the more general description "electromechanical appliance with self-contained motor" contained in Heading 8509. Thus, even though the Interplak could literally fall within Heading 8509, the preferred classification is under Heading 9603, argues Bausch & Lomb. We must therefore construe Heading 9603.

The relevant provisions in Heading 9603 provide:

9603 Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles) ...

\* \* \* \* \* \*

Toothbrushes ... for use on the person, including such brushes constituting parts of appliances:

9603.21.00 Toothbrushes ... [duty rate of 0.2 ¢ each plus 3.4% *ad valorem* ]

Bausch & Lomb advances the following definition for "brush"—

brush: a hand-operated or power-driven tool or device composed of bristles set into a back or handle or attached to a roller and designed or adapted for such uses as sweeping, scrubbing, painting or smoothing.

*Brief of Plaintiff–Appellant* 29 (quoting *Webster's Third New International Dictionary* 286 (1981)). Without deciding whether this is the correct definition of brush, it is not inconsistent with definitions in prior opinions. *See, e.g., Kaysons Import Corp. v. United States,* 56 Cust. Ct. 146, 151 (1966) (noting that "one lexicographer does include a brush to which an electric current is applied" in the definition of "brush"). It is enough at this juncture simply to agree with appellant that the word "brush," by itself, is broad enough to encompass motorized devices such as the Interplak.

The word brush, however, does not appear alone in Heading 9603; brush is limited by the parenthetical "including brushes constituting parts of machines, appliances or vehicles." We interpret this phrase to cover only brushes that are a part of a machine, appliance or vehicle that are imported separately. To interpret this phrase otherwise would require all "machines, appliances or vehicles" that include a brush such as a street sweeper to fall within this heading. Under our reading, only if the brush is separately imported would it fall under this provision. This interpretation is consistent with treating "appliances" separately under Heading 9603.

Bausch & Lomb argues that its interpretation does not require a street sweeper to be classified under Heading 9603 because a street sweeper cannot reasonably be considered a "power driven tool or device composed of bristles." We disagree. It is quite possible that a street sweeper could accurately be described as a "power-driven tool or device composed of bristles ... designed or adapted for such uses as sweeping...." Obviously, under Bausch & Lomb's definition the device does not have to be composed entirely of bristles or its own Interplak would fail to satisfy this definition. Even assuming Bausch & Lomb is correct, however, we can certainly think of other electromechanical devices composed of bristles that would, improperly in our view, be classified under Heading 9603—shoe polishers, vacuum cleaners, car buffers, etc.—and Bausch & Lomb conceded as much at oral argument. As a result, we must reject Bausch & Lomb's construction.

Bausch & Lomb also argues that our construction of Heading 9603 improperly converts the word "including" into a word of exclusion rather than a word of inclusion, quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.23 at 217 (1992) ("When 'include' is utilized, it is generally improper to conclude that the entities not specifically enumerated are excluded."). In fact, the "rule" that Bausch & Lomb cites is really an exception to the ancient and oft-criticized maxim *expressio unius est exclusio alterius*, "i.e., the expression of one is the exclusion of others," *United States v. Wells*

*Fargo Bank*, 485 U.S. 351, 357, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988), which is the title of the quoted section from *Sutherland*. And like all general rules, there are exceptions. Prior cases have interpreted "including" consistent with our approach. *See, e.g., Adams v. Dole*, 927 F.2d 771, 777 (4th Cir.1991) ("[T]he term 'including' can also introduce restrictive or definitional terms."). Our interpretation therefore does no violence to this canon of construction.

Bausch & Lomb also argues that the legislative history of Heading 9603 and prior case law compel a contrary result. We disagree. The predecessor to Subheading 9603.21 was Item 750.40 in the Tariff Schedule of the United States ("TSUS"). That item covered "Other brooms and brushes: Tooth brushes...." Noticeably absent from this provision is the "including" parenthetical currently present in Subheading 9603.21.00. We can safely assume that Congress changed the language for a reason. "A change in the language of a statute is generally construed to import a change in meaning...." Ruth F. Sturm, *Customs Laws and Administration* § 51.7 at 57 (1995); *see also Schott Optical Glass, Inc. v. United States*, 678 F.Supp. 882, 887–88 (1987), aff'd, 862 F.2d 866 (Fed.Cir.1988). Moreover, we should construe the statute, if at all possible, to give effect and meaning to all the terms. *See United States v. Menasche*, 348 U.S. 528, 539, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Inhabitants of Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute...."). To construe Heading 9603.21 as coextensive with Item 750.40 in the manner advocated by Bausch & Lomb would, in effect, read the "including" parenthetical right out of the Heading. Our reading of Heading 9603 gives effect to the "including" language by ensuring that, *inter alia*, brushes that are part of appliances, but which are imported separately, are properly classified under Heading 9603, even though they could arguably be considered merely a part of the appliance.

It is true, as Bausch & Lomb points out, that electric toothbrushes have long been

classified under the toothbrush provision. *See E.R. Squibb & Sons, Inc. v. United States*, 65 C.C.P.A. 61, 576 F.2d 921, 925 (CCPA 1978) (noting that the legislative history of TSUS 750.40 does "evince a clear Congressional intent that electric toothbrushes *qua* electric toothbrushes be classified under item 750.40"); *see also Kaysons*, 56 Cust. Ct. at 152 (holding that, an electric toothbrush, "being known in common speech and to commerce as a toothbrush, is properly classifiable as such."). The government does not argue to the contrary. In none of those cases, however, did the brush or toothbrush provision have the "including" parenthetical that now appears. As a result, Bausch & Lomb's reliance on those decisions, while not without merit, misses the mark because the Heading has been substantially changed. *Cf. Lonza*, 46 F.3d at 1106 ("The common meaning of a tariff term, once established, remains controlling *until a subsequent change in statute* compels a revised construction of the term's meaning." (emphasis added)).

■ For the same reason, the ITC TSUS–HTSUS Conversion Report is not persuasive. The Conversion Report is "clearly relevant" in determining the correct classification. *See Beloit Corp. v. United States*, 843 F.Supp. 1489, 1499 (CIT 1994) (citing H.R. Conf. Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582). But it "should not be viewed as a substitute for the traditional classification process." *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 533 (Fed.Cir.1994). When the language of the HTSUS Heading is properly interpreted, as described above, we conclude that the Conversion Report is contrary to congressional intent.

## CONCLUSION

Because we agree with the trial court's ultimate conclusion on this matter, its decision is

*AFFIRMED.*

COSTS

Each party to bear its own costs.