BRADFORD INDUSTRIES, INC.,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–1039.

United States Court of Appeals,
Federal Circuit.

Aug. 7, 1998.

Richard J. Kaplan, Lamb & Lerch, New York, New York, argued for plaintiff–appellant.

Amy M. Rubin, Attorney, Civil Division, International Trade Field Office, U.S. De-partment of Justice, New York, New York, argued for defendant–appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, of Washington, D.C.; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York, New York. Of counsel on the brief was Beth C. Brothman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York, New York.

Before CLEVENGER, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

CLEVENGER, Circuit Judge.

This is a trade classification case. The issue on appeal is whether imitation leather articles imported by Bradford Industries, Inc. (Bradford) are properly classifiable under Chapter 56 or under Chapter 39 of the Harmonized Tariff Schedule of the United States (HTSUS). The United States Customs Service (Customs) classified the goods under Chapter 56 at a duty rate of 12.5 percent *ad valorem*. The Court of International Trade agreed with Customs. We also agree, and we therefore affirm.

## I

The imported products, known by their trade names as Temasoft and Forsoft, consist of a polyurethane sheet attached to a nonwoven textile sheet. In forming the products, the nonwoven textile sheet is dipped in liquid polyurethane and the polyurethane dries on both sides of the sheet. The polyurethane is then "buffed" off of one side of the nonwoven textile sheet so that the fibers are not entirely embedded in the polyurethane on that side. The polyurethane forms the face of the products and the exposed nonwoven fibers make up the interior of the products. The products are imported in this condition.

Customs classified the goods under HTSUS 5603.00.90, as "other" "nonwovens,

whether or not impregnated, coated, covered or laminated." Bradford asserts that the goods are properly classifiable under HTSUS 3921.13.11 as sheets of cellular polyurethane plastics combined with textile materials. Although both HTSUS subsections physically describe the imported products, any overlap between the subsections is eliminated by respective Exclusionary Notes to Chapters 39 and 56. Note 2(*l*) of Chapter 39 specifically excludes from coverage under Chapter 39 any goods that fall within Section XI, which includes Chapter 56. Note 3 of Chapter 56 excludes certain goods from Chapter 56 but includes others, and thus controls whether the goods fall within Chapter 56 or alternatively within Chapter 39. Note 3 excludes from classification under Heading 5603, in pertinent part (emphasis added):

> (c) Plates, sheets or strip of cellular plastics or cellular rubber combined with felt or nonwovens, *where the textile material is present merely for reinforcing purposes* (chapter 39 or 40).

The Court of International Trade determined after trial that Bradford's imported products were not excluded from Chapter 56 by subsection (c) because the nonwoven textile sheet serves more than just a reinforcing role in those products. In particular, the court found that, in addition to its reinforcing role, the nonwoven textile sheet acts as a carrier for the polyurethane; provides the products with the desired "dimension, stability, and physical characteristics" lacking from the polyurethane alone; contributes to the stretchability, printability, wickability, and feel of the fabric; and improves the final products' ability to hold a stitch and to adhere to other substances. Because the court concluded that the imported products are not excluded by Note 3, it ruled that they fall within Chapter 56 and thus cannot fall within Chapter 39.

## II

■ In classifying imported merchandise, we first construe the relevant classification headings, a question of law which we review without deference to the trial court, and we then determine under which of the properly construed tariff terms the merchandise at issue falls, a factual inquiry which we review for clear error. *See Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1364–65 (Fed.Cir. 1998). The first step of this process is the focus of Bradford's appeal.

■ Bradford argues that the Exclusionary Notes cited above provide a definition of "merely for reinforcing" that is narrower than the plain, broad meaning adopted by the Court of International Trade. Bradford effectively argues that the Exclusionary Notes are concerned with two broad roles served by textile fabrics: ornamentation and reinforcement. Bradford contends that when unfigured, unbleached, or uniformly dyed textile fabrics are applied to one face only of a plastic sheet, they serve only reinforcement purposes. In contrast, asserts Bradford, when the textile is figured, printed, or more elaborately worked, or is a special product such as pile, tulle, or lace, it serves a function beyond that of mere reinforcement. Only if the product has such ornamental features, says Bradford, does it serve a role beyond mere reinforcement. Because the nonwoven textile in Temasoft and Forsoft does not serve any such decorative role, Bradford asserts that the fabric is merely for reinforcement and that the products are therefore excluded from Chapter 56.

We cannot find a basis in Note 3 for Bradford's binary division of the roles played by nonwoven textiles. Rather, Note 3 mentions a single role: mere reinforcement. By implication, any product whose textile plays more than a mere reinforcement role, whether that role be decorative or something else, is not excluded from Chapter 56 by subsection (c) of Note 3. Consistent with this conclusion, the Court of International Trade determined that the phrase "merely for reinforcing" in Note 3 meant that the only function of the nonwoven textile can be to strengthen the polyurethane. In determining that Bradford's products did not meet the exclusion in Note 3, the Court of International Trade identified a number of roles beyond reinforcement

**1342**

played by the nonwoven textile sheet in Temasoft and Forsoft. These included providing dimension, stability, stretchability, and other physical characteristics lacking from the polyurethane alone, and also contributing to the ability of the products to adhere to other substances. Although some of these roles may be closely related to the reinforcement that the nonwoven textile sheet provides to the polyurethane, others are not so closely related, and still others, such as wickability or the ability to adhere, have no real connection to reinforcement. Thus, we agree with the Court of International Trade that Bradford's products are not excluded from Chapter 56 by subsection (c) of Note 3, and that the products were therefore properly classified by Customs under HTSUS 5603.00.90.

Bradford argues that its ornamentation/reinforcement distinction is supported by a General Explanatory Note to Chapter 39, which is cross-referenced in a General Explanatory Note to Section 56. The Explanatory Note in Chapter 39 does seem to make the ornamentation/reinforcement distinction urged by Bradford. However, the Explanatory Note did not exist when the products subject to this appeal were imported. When the products here were imported, the Explanatory Note in Chapter 56 instead only cross-referenced an Explanatory Note in Chapter 40, which also seems to make a distinction between ornamentation and reinforcement. Nonetheless, Chapter 40 covers rubber products while Chapter 39 deals with plastic products. As a result, there was nothing to guide Customs at the time to apply the distinction between ornamentation and reinforcement to any group of products other than rubber products.

In conclusion, the Court of International Trade did not err in finding that Bradford's Temasoft and Forsoft imitation leather products were properly classified by Customs under HTSUS 5603.00.90, because Exclusionary Note 3 to Chapter 56 did not exclude them from Chapter 56.

*AFFIRMED.*