**Slip Op. 02-21**
**United States Court of International Trade**

|  |  |
|---|---|
| BOEN HARDWOOD FLOORING, INC., | |
| Plaintiff, | |
| v. | Before: Pogue, Judge |
| UNITED STATES, | Court No. 96-08-02006 |
| Defendant. | |

[Plaintiff's motion for summary judgment denied. Defendant's cross-motion for summary judgment granted. Judgment entered for Defendant.]

Decided: February 25,2002

Galvin & Mlawski (John J. Galvin), Attorney, for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General, John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Barbara S. Williams, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel, for Defendant.

**OPINION**

**Pogue, Judge**: Plaintiff Boen Hardwood Flooring, Inc. ("Plaintiff" or "Boen") challenges the denial of its protest, filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1994), against the liquidation of the subject merchandise.[1] Defendant United States Customs Service ("Defendant"

---

[1] Liquidation constitutes the appraisal of the value of imported merchandise and determination of the appropriate

or "Customs") classified Plaintiff's merchandise under heading 4412 of the Harmonized Tariff Schedule of the United States (1995) ("HTSUS"), as "[p]lywood, veneered panels, and similar laminated wood."  Plaintiff contends that the subject merchandise should be liquidated under subheading 4409.20.25, HTSUS, as "[n]onconiferous [w]ood flooring."  See Pl.'s Statement of Material Facts Not in Issue at 2 ("Pl.'s Statement of Facts").

Jurisdiction lies under 28 U.S.C. § 1581(a) (1994).  Customs' classification is subject to de novo review by this Court pursuant to 28 U.S.C. § 2640 (1994).  This action is before the Court on cross motions for summary judgment made by Plaintiff and Defendant pursuant to USCIT Rule 56.  The Court finds, for the reasons discussed below, that the subject merchandise is properly classified under heading 4412, HTSUS, as a "veneered panel" and grants summary judgment for the defendant.

## Undisputed Facts

The subject merchandise consists of hardwood flooring made up of three layers of wood in which the grain of the middle layer is perpendicular to the grain of the two outer layers.  See Pl.'s Statement of Facts at 4-5; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 18-21 (Def.'s Resp. to Pl.'s Statement of

classification and rate of duty.  See 19 U.S.C. § 1500 (1994); 19 C.F.R. § 159 (2001).

Facts"). The three layers of the flooring are glued together. <u>See</u>
Def.'s Statement of Undisputed Facts ¶ 3; Pl.'s Statement of Facts
at 6. Without acknowledging it by explicit agreement, both parties
to this action do agree that the subject merchandise has been
"laminated."[2] <u>See</u> Pl.'s Statement of Facts at 6 (stating that the
layered stock from which the merchandise is produced is "glu[ed]
under pressure"); Def.'s Statement of Undisputed Facts ¶ 3 (stating
that the top and bottom layers of the flooring are glued to the
middle layer); Def.'s Mem. Supp. Cross Mot. Summ. J. and Opp'n
Pl.'s Mot. Summ. J. at 14-15 ("Def.'s Mem.") (arguing that the
merchandise meets the definition of "laminated" and therefore is
properly classifiable as "similar laminated wood"), 18 (arguing
that the subject merchandise is "highly processed . . . by
lamination"); <u>see also</u> Dep. of Thomas L. Goss at 29 (stating that
a hydraulic press is used to "put[] pressure and heat down on the
[flooring layers] to press [them] together and to get the glue to
bond"); Boen Marketing Material, <u>Transform Your World with Boen
Hardwood</u>, Collective Ex. A at Specification Suggestions - Materials
(stating that "Boen Longstrip shall be laminated construction");
<u>Boen Hardwood Flooring Floating Floor System Installation Guide</u>,

---

[2] "Laminate" means "[t]o bond together two or more pieces of
wood to make a single piece, using adhesive and pressure." <u>Terms
of the Trade</u> 192-93 (4th ed. 2000). <u>See also</u> <u>Webster's II New
Riverside University Dictionary</u> 674 (1988) ("Webster's")
(defining "laminate" as "[t]o make by uniting several layers").

Def.'s Ex. 1, (describing the merchandise as "three ply laminate").

The flooring is continuously shaped with tongue and groove along its edges and ends, see Pl.'s Statement of Facts at 7; Def.'s Mem. at 2, and comes in a standard size of 5 1/2 inches wide, 7 feet 2 5/8 inches long, and approximately 5/8 inch thick.[3] See Pl.'s Statement of Facts at 4; Def.'s Resp. to Pl.'s Statement of Facts ¶ 17. The top layer of the flooring is composed of strips of hardwood measuring approximately 1/8 inch thick and 2 3/4 inches wide. See Pl.'s Statement of Facts at 5; Def.'s Resp. to Pl.'s Statement of Facts ¶ 21. The center layer is composed of softwood[4] strips or slats measuring approximately one inch wide and 1/4 inch

---

[3] The parties disagree as to the thickness of the subject merchandise. Plaintiff asserts that it measures 5/8 (or 20/32) inch thick, see Pl.'s Statement of Facts at 4, while defendant asserts that the flooring measures 19/32 inch, a difference of 1/32 inch. Def.'s Resp. to Pl.'s Statement of Facts ¶ 17. The two sample pieces presented to the Court measure approximately 9/16 (or 18/32) and 19/32 inch thick. These discrepancies in the total thickness of the samples do not present a material issue of fact in this action.

[4] Plaintiff states that this layer is composed of milled pine slats. See Pl.'s Statement of Facts at 5; Pl.'s Mem. Supp. Mot. Summ. J. at 1-2 ("Pl.'s Mem."). Defendant points out that Plaintiff stated in its deposition that the layer is composed of Norwegian spruce. See Def.'s Resp. to Pl.'s Statement of Facts ¶ 20; see also Dep. of Thomas L. Goss at 22. Defendant asserts that it lacks information sufficient to form a belief regarding the type of wood used in the center layer. Def.'s Resp. to Pl.'s Statement of Facts ¶¶ 20-21. As both pine and spruce are softwoods, see U.S. Department of Agriculture, Forest Service, Forest Products Laboratory, Wood Handbook: Wood as an Engineering Material 1-2, Table 1-1, 1-10 - 1-16 (1999) ("Wood Handbook"), the Court finds that the distinction is immaterial for the purpose of this action.

thick.[5]   These softwood strips are laid next to each other with
their grain perpendicular to the grain of the two outer layers of
the flooring.  See Pl.'s Statement of Facts at 5; Def.'s Resp. to
Pl.'s Statement of Facts ¶ 20.  The bottom layer of the flooring is
composed of spruce strips, 1/8 inch thick and 2 1/4 to 2 3/4 inches
wide.  See Pl.'s Statement of Facts at 4; Def.'s Resp. to Pl.'s
Statement of Facts ¶ 19.  The grain of the spruce pieces is
perpendicular to the grain of the softwood center layer and
parallel to the grain of the top hardwood layer.  See Pl.'s
Statement of Facts at 5; Def.'s Resp. to Pl.'s Statement of Facts
¶ 20.

## Parties' Arguments

Plaintiff argues that the imported hardwood flooring in
question should be classified within heading 4409, HTSUS, "[w]ood
(including strips and friezes for parquet flooring, not assembled)
continuously shaped (tongued, grooved, rebated, chamfered, V-
jointed, beaded, molded, rounded or the like) along any of its
edges or faces, whether or not planed, sanded or finger-jointed,"

---

[5] The measurements of the strips forming the center layer
have been found by the parties and by this Court to vary slightly
among the samples.  In its brief, Plaintiff asserted that the
center strips measure 7/8 inch to 1 inch wide and 1/2 inch thick.
See Pl.'s Statement of Facts at 5-6; Pl.'s Mem. at 1-2.
Defendant asserts that the center strips in its sample of the
merchandise measure 1 1/16 inch wide and 5/16 inch thick.  See
Def.'s Mem. at 2.  The center strips in the Court's samples of
the merchandise measure approximately 1 1/8 inch wide and 1/4
inch thick.  The differences in the measurements of the center
layer do not present a material issue of fact.

and further, under subheading 4409.20.25, HTSUS, "[n]onconiferous [w]ood flooring."  Plaintiff contends that the subject merchandise is properly classifiable under heading 4409, HTSUS, because under prior tariff acts, both wooden flooring and laminated wood, when produced in dimensions found in nature, were classified as lumber products not further manufactured than sawed, planed, tongued, and grooved, rather than as more advanced items.  See Pl.'s Mem. at 14. Plaintiff asserts that the subject merchandise is not classifiable as plywood, veneered panels, or laminated wood because it does not meet the definitions of these items.  See Pl.'s Reply to Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. and Resp. Opp'n Def.'s Cross Mot. Summ. J.  at 4-13 ("Pl.'s Reply").  Further, Plaintiff argues that even if the subject merchandise were "[p]lywood, veneered panels, or similar laminated wood," it would have the essential character of an item of heading 4409, HTSUS, and be classifiable thereunder according to the Harmonized Commodity Description and Coding System Explanatory Notes (1st ed. 1986) ("Explanatory Notes") for heading 4412, HTSUS.  See Pl.'s Reply at 13-18.

Defendant asserts that the flooring is properly classified under heading 4412, HTSUS, which describes "[p]lywood, veneered panels, or similar laminated wood," and argues that the flooring meets the definition of plywood.  Defendant argues in the alternative that even if the flooring were not classifiable as plywood it still fits the definitions of "veneered panels" and

"similar laminated wood." Def.'s Mem. at 5. Defendant asserts that the flooring is excluded from heading 4409, HTSUS, by the terms of the headings and the Explanatory Notes, id. at 15-17; that cases decided under the TSUS and earlier Tariff Acts are not controlling due to the change in statutory language and legislative intent, id. at 18-20; and that the cases do not support the classification of the subject merchandise under heading 4409, HTSUS. Id. at 21-26.

**Standard of Review**

Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See USCIT Rule 56(d); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence is such that [the trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court employs a two-step process in analyzing a customs classification. "[F]irst, [it] construe[s] the relevant classification headings; and second, [it] determine[s] under which of the properly construed tariff terms the merchandise at issue falls." Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citing Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)). Interpretation of the tariff

classification terms is a question of law, while application of the terms to the merchandise at issue is a question of fact. See id. Summary judgment is appropriate when the dispute involves only the proper tariff classification for the subject merchandise, not the nature of the merchandise itself. See id. Where there is a dispute about the nature of the subject merchandise, there exists a genuine issue of material fact and a trial is warranted.

In the instant case, the parties agree that the subject merchandise is flooring consisting of a hardwood layer and two softwood layers, glued together with the grains of the pieces forming the center layer laid perpendicular to the grains of the pieces forming the two outer layers. As the parties agree to the essential nature and material characteristics[6] of the merchandise, and disagree only as to its proper classification under the HTSUS, summary judgment of the classification issue is appropriate.

## Discussion

The HTSUS consists of (1) the General Notes; (2) the General Rules of Interpretation ("GRI"); (3) the Additional U.S. Rules of Interpretation; (4) sections I through XXII (encompassing chapters 1 through 99, including all section and chapter notes, article provisions, and tariff and other treatment accorded thereto); and

---

[6] As noted above, the disagreements as to the composition and measurements of the center layer, see supra notes 4-5, are not material such that they may preclude summary judgment.

(5) the Chemical Appendix.  Classification of goods under the HTSUS is governed by the General Rules of Interpretation ("GRI").  See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999); Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  GRI 1 states that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes."  GRI 1; see also Orlando Food Corp., 140 F.3d at 1440.  Goods that cannot be classified solely by reference to GRI 1 must be classified by reference to the succeeding GRIs in numerical order.  Furthermore, "[a]bsent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same."  Carl Zeiss, Inc., 195 F.3d at 1379 (internal citation omitted).

The Court may also refer to the Explanatory Notes, which constitute the World Customs Organization's official interpretation of the HTSUS.  See Baxter Healthcare Corp. of Puerto Rico v. United States, 22 CIT 82, 89 n.4, 998 F. Supp. 1133, 1140 n.4 (1998).  Although the Explanatory Notes are not legally binding, they are useful in ascertaining the correct classification of the merchandise in question.  See Rollerblade, Inc. v. United States, 112 F.3d 481, 486 n. 3 (Fed. Cir. 1997) (stating that the Explanatory Notes are "intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting its subheadings")

(citing <u>Mita Copystar Am. v. United States</u>, 21 F.3d 1079, 1082 (Fed. Cir. 1994)); <u>Lonza, Inc. v. United States</u>, 46 F.3d 1098, 1109 (Fed. Cir. 1995) ("While the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting the HTS[US] subheadings.").

Determining which heading provides the most appropriate classification of merchandise requires close textual analysis of the language of the headings and the accompanying explanatory notes. The General Explanatory Notes to Chapter 44, HTSUS, indicate that the chapter covers "unmanufactured wood, semi-finished products of wood and, in general, articles of wood." Explanatory Notes at 622. The headings of Chapter 44 are arranged so that less processed items appear earlier in the chapter, while items that have been subjected to further manufacturing appear later. <u>See generally</u> Chapter 44, HTSUS; <u>see also</u> U.S. Customs Service Headquarters Ruling ("HQ") 963396 (Mar. 28, 2000) ("Chapter 44, HTSUS . . . is structured so that less processed wood appears at the beginning of the chapter followed by more advanced wood in later headings within the same chapter."); HQ 963655 (Feb. 3, 2000); HQ 961208 (June 1, 1999); HQ 962715 (June 1, 1999). The General Explanatory Notes explain that items covered by Chapter 44 may be "grouped broadly" in four general categories, including "(2) [s]awn, chipped, sliced, peeled, planed, sanded, end-jointed, e.g., finger-jointed . . . and continuously shaped wood (headings 44.07

to 44.09)," and "(3) [p]article board and similar board, fibreboard, laminated wood and densified wood (headings 44.10 to 44.13)."[7]  Explanatory Notes at 622.  These broad categories separate laminated products from products that are merely shaped.

---

[7] The four general categories listed in the General Explanatory Notes to Chapter 44 read as follows:

(1)  Wood in the rough (as felled, split, roughly squared, debarked, etc.) and fuel wood, wood waste and scrap, sawdust, wood in chips or particles; hoopwood, poles, piles, pickets, stakes, etc.; wood charcoal; wood wool and wood flour; railway or tramway sleepers (generally headings 44.01 to 44.06).  However, the Chapter excludes wood, in chips, in shavings, crushed, ground, or powdered, of a kind used primarily in perfumery, in pharmacy, or for insecticidal, fungicidal, or similar purposes (heading 12.11) and wood, in chips, in shavings, ground or powdered, of a kind used primarily in dyeing or in tanning (heading 14.04).
(2)  Sawn, chipped, sliced, peeled, planed, sanded, end-jointed, e.g., finger-jointed (i.e., jointed by a process whereby shorter pieces of wood are glued together end to end, with joints resembling interlaced fingers, in order to obtain a greater length of wood) and continuously shaped wood (headings 44.07 to 44.09).
(3)  Particle board and similar board, fibreboard, laminated wood and densified wood (headings 44.10 to 44.13).
(4)  Articles of wood (except certain kinds specified in Note 1 to this Chapter and which, together with others, are referred to in the Explanatory Notes to particular headings below) (headings 44.14 to 44.21).

Explanatory Notes at 622.

**I. Heading 4409, HTSUS**

As noted, heading 4409, HTSUS, covers "[w]ood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded, or the like) along any of its edges or faces, whether or not planed, sanded, or finger-jointed." The Explanatory Note for heading 4409, HTSUS, states that

> [t]his heading covers timber, particularly in the form of boards, planks, etc., which, after sawing or squaring, has been continuously shaped along any of its edges or faces either to facilitate subsequent assembly or to obtain the mouldings or beadings described in Item (4) below, whether or not planed, sanded, or end-jointed, e.g. finger-jointed.

Explanatory Notes at 629.

The subject merchandise fits the description in heading 4409, HTSUS, of "[w]ood . . . continuously shaped . . . along any of its edges or faces, whether or not planed [or] sanded." It is shaped along its edges and ends, and is fitted with tongue and groove in order to facilitate its assembly as flooring. See Dep. of Thomas L. Goss at 35; Pl.'s Statement of Facts at 4, 7; Def.'s Resp. to Pl.'s Statement of Facts ¶ 17; Def.'s Mem. at 2. The initial terms used by the Explanatory Note, however, "timber, particularly in the form of boards, planks, etc.," indicate that heading 4409, HTSUS, contemplates wood material that is less processed than the subject merchandise. Explanatory Notes at 629.

"Timber" is defined in relevant part as "[w]ood as a building

material: lumber"[8] or "[a] dressed piece of wood, esp. a beam in a structure," Webster's at 1210; "[w]ood used for building, carpentry, or joinery," McGraw-Hill Dictionary of Scientific and Technical Terms at 2033; "wood, whether growing or cut, especially when suitable for use in construction and carpentry," Harcourt; see also Terms of the Trade at 342 (defining timber as "[a] size classification of lumber that includes pieces that are at least five inches in their smallest dimension"); Corkhill, The Complete Dictionary of Wood at 583-84 (defining timber as "[w]ood suitable for building and structural purposes . . . . The term is generally used in a wider sense and includes all kinds and forms of wood, especially when in bulk. . . . Usually the term implies stuff of large section.")

"Board" is defined as "[a] piece of lumber whose dimensions are less than 2 inches (5 centimeters) thick and between 4 and 12 inches (10 and 30 centimeters) wide," McGraw-Hill Dictionary of

---

[8] Lumber is defined as "[t]imber sawed into standardized structural members, as boards or planks," Webster's at 708; "[a] wood product manufactured from logs by sawing, resawing and, usually, planing, with all four sides sawn. ('Timber' is used in place of 'lumber' in many countries.)," Terms of the Trade at 205; "[l]ogs that have been sawed and prepared for market," McGraw-Hill Dictionary of Scientific and Technical Terms 1177 (Sybil P. Parker ed., 5th ed. 1994); "a collective term for wood that has been sawed into appropriate sizes for building and other uses," Harcourt Academic Press Dictionary of Science and Technology, available at http://www.harcourt.com/dictionary ("Harcourt"); "[a]n American term for converted wood; also for felled trees prepared for the sawmill. Timber split or sawn for use in building." Thomas Corkhill, The Complete Dictionary of Wood 317 (1979).

Scientific and Technical Terms at 246; "[a] long flat slab of sawed lumber: plank" or "[a] flat piece of rigid material, as wood adapted for a special use," Webster's at 185; "[a]pplied to converted softwoods over 4 in. wide and less than 2 in. thick, and to hardwoods of any width and up to 1 ¼ in. thick." Corkhill, The Complete Dictionary of Wood at 50.  But cf. Terms of the Trade at 36-37 (defining "board" as "[a] piece of lumber less than two inches in nominal thickness and one inch or more in width," but also as "[a] generic term used to describe various composite panels such as oriented strand board, waferboard, fiberboard, etc.," and as "[p]aperboard"); Harcourt (defining "board" as "a long, flat, rectangular piece of cut wood that is relatively wide in comparison to its thickness," but also as "a composition material fabricated in large sheets; for example, plasterboard or fiberboard").

Finally, "plank" is defined as "[a] heavy board with thickness of 2-4 inches (5-10 centimeters) and a width of at least 8 inches (20 centimeters)," McGraw-Hill Dictionary of Scientific and Technical Terms at 1520; "1. a long, flat piece of wood that is thicker than a board.  2. lumber formed into such pieces," Harcourt; "[a] piece of lumber two or more inches thick and six or more inches wide, designed to be laid flat as part of a load-bearing surface, such as a bridge deck," Terms of the Trade at 250; "[a] piece of lumber cut thicker than a board," Webster's at 899; "[s]quare sawn softwood 2 to 6 in. thick and 11 in. or more in

width.  There is considerable difference in the limits in different markets.  A plank in hardwood is from 1 ½ in. x 9 in. and 8 ft. upwards in length."  Corkhill, The Complete Dictionary of Wood at 412.

While two definitions of the term "board" recognize a more general meaning, see Terms of the Trade at 37; Harcourt, the other definitions of "timber," "lumber," "board," and "plank" strongly suggest that these terms refer to relatively unprocessed single-layer wood pieces, cut and shaped by the sawmill for use in carpentry and construction, rather than to composite panels.  The subject merchandise is distinct from such wood products, as it has been not only sawn and shaped, but layered, laminated, and finished into a final product.

Plaintiff relies on cases decided under the TSUS and prior Tariff Acts to argue that continuously shaped wooden flooring and glued stock, or wooden boards or planks made by gluing pieces of wood together, have been consistently treated as if they had been shaped only.  In these cases, the lamination and assembly operations performed on the boards at issue were held not to constitute a further manufacturing process or to result in a product that was further advanced than boards which had been only shaped, such as planed, tongued, grooved.  Under the present tariff schedules, such treatment would allow laminated products to be classified under heading 4409, HTSUS.

Plaintiff's reliance on these cases, however, is misplaced. The cases indicate that glued stock was treatable as lumber, not further manufactured or advanced than sawed, planed, and tongued and grooved, when (1) the laminated piece was of a size obtainable in nature as one piece in the same species of wood, and (2) the gluing operations were performed in order to obtain a larger piece of wood from smaller pieces.

In B.A. McKenzie & Co., Inc. v. United States, 39 Cust. Ct. 52 (1957), wood intended for making drawer sides was available in one-piece stock, which was a solid piece of wood, and in two-piece stock, which was a piece of wood made by dovetailing and gluing together two smaller pieces. Both the one-piece and two-piece stock were of the same size. The court decided that the two-piece or glued stock was not further manufactured or advanced than the one-piece stock. The dovetailing and gluing operations simply created a larger piece of wood from smaller pieces, and did not change the character of the wood as lumber, or a material from which to make finished articles. The Treasury Department later promulgated a notice adopting the principle of the McKenzie decision by stating that glued stock of a size obtainable in nature was to be treated as lumber. T.D. 54595, 93 Treas. Dec. 204, 205 (1958) (stating that "glued stock, including jointed and glued stock" may be recognized as lumber if "of a length, width, and thickness which is recognized in the trade as lumber if of one-

piece material").

In Border Brokerage Co. v. United States, 52 Cust. Ct. 204 (1964), as in the McKenzie case, the court concluded that one-piece and two-piece wood stock of the same size and intended for the same purpose were both classifiable as not further manufactured than planed, tongued and grooved.  The two-piece stock was assembled through lamination and bullnosing (a planing process) from smaller pieces of wood for the purpose of creating a larger piece. Similarly, the court in D.B. Frampton & Co. v. United States, 60 Cust. Ct. 4 (1968), held that laminated or assembled wood planks which were of a size obtainable in nature as a solid piece of wood of the same species were classifiable as having not been further manufactured than planed, tongued, and grooved.  Laminating or assembling operations could be performed without being held to advance the condition of the wood when the purpose of the lamination or assembly was to obtain a larger piece of wood, but one of a size that could still be obtained by cutting a natural log.  See also C.B. Smith Co. v. United States, 64 Cust. Ct. 278 (1970) (Glued hardwood, whether edge-glued, end-glued, or face-glued, was classifiable as lumber if it met the size requirements of the tariff code.  The size specifications were adopted in an effort to classify glued stock that is similar to lumber in use and performance separately from dimension stock, which has different applications than lumber.); Pacific Hardwood Sales Co. v. United

States, 64 Cust. Ct. 68 (1970) (Wood for making drawer sides, produced by edge-gluing numerous smaller strips of wood, was dimension stock not classifiable as lumber because it did not meet the size requirements of the tariff code for classification as lumber. The court acknowledged that the adoption of the size requirements was rooted in the similarity of glued stock of certain dimensions to lumber in its performance and use.); cf. Clarence S. Holmes, A/C Best Products Mfg. Co. v. United States, 44 Cust. Ct. 111 (1960) (Maple boards wider than 9 inches, produced by edge-gluing narrower maple pieces, were held not classifiable under the same tariff heading as solid maple lumber pieces because solid maple pieces are not produced in widths over nine inches. The glued maple lumber was classified under a heading covering wood that had been further manufactured than lumber but was not yet a finished article.); P.W. Drittler v. United States, 52 Cust. Ct. 227, Abstract No. 68213 (1964) (Boards measuring 24 inches wide and eight feet long, made by edge-gluing ten strips of yellow birch, were further manufactured than sawed, planed, and tongued and grooved. The court declined to follow McKenzie on the grounds that the boards in question were of a size not normally obtainable in nature. The court classified them under a heading covering wood that had been further manufactured than lumber but was not yet a finished article.).

The holdings of these cases rested on the principle that the

glued stock was "no different in essential character and use from the 1-piece material, which was classifiable as sawed lumber, not further manufactured than planed, and tongued, and grooved." Clarence S. Holmes, A/C Best Products Mfg. Co., 44 Cust. Ct. at 113. These cases involved neither layered products nor gluing operations intended to create a product of greater strength or durability.  In the instant case, the purpose of assembling and gluing together separate pieces of wood is not merely to obtain a board of a different size that is otherwise similar in performance and use to a solid board.  Rather, the purpose is to obtain a wood flooring product that is superior in strength, durability, and resistance to warping to flooring made of single-layer shaped boards.  See Dep. of Thomas L. Goss at 36-38 (stating that the use of hardwood for the top layer of the flooring provides durability, while the layered construction and placement of the grains at right angles provides stability, resistance to warping, and strength in the flooring); Def.'s Statement of Facts ¶ 5; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 5.  This purpose is not contemplated within the reasoning of the cases that treated assembled and laminated wood products as no more advanced than shaped wood.

In an alternative argument, Plaintiff asserts that the Explanatory Note for heading 4412, HTSUS, and Chapter Note 4, Chapter 44, HTSUS, require the subject merchandise to be classified

under heading 4409, HTSUS.  Explanatory Note 44.12 states that

> the products of this heading may be worked to
> form the shapes provided for in heading 44.09,
> curved, corrugated, perforated, cut or formed
> to shapes other than square or rectangular or
> submitted to any other operation provided it
> does not give them the character of articles
> of other headings.

Explanatory Notes at 633.

Chapter Note 4 states that

> [p]roducts of heading No. 44.10, 44.11 or
> 44.12 may be worked to form the shapes
> provided for in respect of the goods of
> heading No. 44.09, curved, corrugated,
> perforated, cut or formed to shapes other than
> square or rectangular or submitted to any
> other operation provided it does not give them
> the character of articles of other headings.

Chapter Note 4, Chapter 44, HTSUS.

Plaintiff argues that even if the five-layer stock from which the subject merchandise is produced were classifiable under heading 4412, HTSUS, the subject merchandise itself "has been so far advanced as to dedicate it solely for use as flooring."  Pl.'s Reply at 16.  Plaintiff appears to suggest that because the merchandise is fully manufactured into wood flooring and is usable only for that purpose, it has the character of an article of another heading, namely heading 4409, HTSUS, which contains a subheading listing "[w]ood flooring." Plaintiff claims, therefore, that under the Explanatory Note and Chapter Note 4, classification under heading 4412, HTSUS, is precluded.

This approach is flawed, however, because it characterizes the

merchandise as an article of another heading by referring to the subheadings.  The Chapter Note and the Explanatory Note speak of "articles of other headings." Chapter Note 4, Chapter 44, HTSUS; Explanatory Notes at 633 (emphasis supplied).  The suggested characterization, "wood flooring," does not appear in heading 4409, HTSUS; rather, it is a subheading listed under heading 4409. Heading 4409, HTSUS, mentions only shaping operations, and it is clear from the Chapter Note and Explanatory Note that merchandise falling under heading 4412, HTSUS, may have been subjected to any of these shaping operations.

Finally, heading 4409, HTSUS, addresses only shaping and planing operations, while heading 4412, HTSUS, encompasses products which have been subjected to lamination operations as well as shaping processes.  Heading 4409, HTSUS, therefore does not provide a complete and accurate description of the subject merchandise.

**II. Heading 4412, HTSUS.**

As noted earlier, heading 4412, HTSUS, covers "[p]lywood, veneered panels and similar laminated wood," and the General Explanatory Notes to Chapter 44 indicate that items covered by heading 4412, HTSUS, may have been subjected also to the processes that characterize the items of heading 4409, HTSUS.  Explanatory Notes at 622.  This is reiterated in Explanatory Note 44.12, which states that "[t]he products of this heading may be worked to form

the shapes provided for in heading 44.09 . . . <u>provided</u> it does not give them the character of articles of other headings." <u>Id.</u> at 633 (emphasis supplied). Therefore, items falling within heading 4412, HTSUS, may have been continuously shaped or otherwise worked according to heading 4409, HTSUS, in addition to having been laminated or glued in accordance with heading 4412, HTSUS.

**A. The Subject Merchandise is Not Plywood**

"Plywood" is defined as "[a] flat panel made up of a number of thin sheets, or veneers, of wood in which the grain direction of each ply, or layer, is at right angles to the one adjacent to it. The veneer sheets are united, under pressure, by a bonding agent," <u>Terms of the Trade</u> at 252;[9] "[a] structural material consisting of

---

[9] As "plywood" tends to be defined in terms of "veneers" or "sheets," definition of those terms is also necessary. Definitions of "veneer" include "[w]ood peeled, sawn, or sliced into sheets of a given constant thickness and combined with glue to produce plywood or laminated-veneer lumber," <u>Terms of the Trade</u> at 360; "1. A thin layer of material, as wood or plastic, bonded to and used for covering a [usually] inferior material. 2. Any of the thin layers glued together in manufacturing plywood," <u>Webster's</u> at 1280; "[a] thin sheet of wood of uniform thickness used for facing furniture or, when bonded, used to make plywood," <u>McGraw-Hill Dictionary of Scientific and Technical Terms</u> at 2126; "1. a thin layer of material, especially a thin sheet of expensive wood laid over a base of cheaper wood in order to improve the outward appearance of the cheaper wood. . . . 3. any of the layers that compose a sheet of plywood," <u>Harcourt</u>; "thin leaf of wood applied with glue to a panel or frame of solid wood. . . . [T]he modern machine-cut sheets are rarely thicker than 1/32 in. . . . Plywood and beams or planks of compounded woods are developed by a veneering process." <u>The Columbia Encyclopedia</u> 2870 (5th ed. 1993).

"Sheet" is defined as "1. The same as a panel; 'a sheet of particleboard.' 2. A sheet of paper," <u>Terms of the Trade</u> at 298

layers of wood glued tightly together, [usually] with the grains of adjoining layers at right angles to each other," Webster's at 906; "[a] material composed of thin sheets of wood glued together, with the grains of adjacent sheets oriented at right angles to each other," McGraw-Hill Dictionary of Scientific and Technical Terms at 1531; "thin sheets of wood glued together, with the grain of each consecutive piece positioned at a right angle to the preceding one to give strength and prevent warping; widely used in construction," Harcourt; "manufactured board composed of an odd number of thin sheets of wood glued together under pressure with grains of the successive layers at right angles," The Columbia Encyclopedia at 2173; a "composite wood panel made of three or more layers glued together with the grain of adjoining plies at right angles to each other. Thin panels are built up of veneer (thin sheet wood)

---

(See text at p. 26, infra, for definitions of "panel."); "[a] material in a configuration similar to a film except that its thickness is greater than 0.25 millimeter. . . . A portion of a surface such that it is possible to travel continuously between any two points on it without leaving the surface," McGraw-Hill Dictionary of Scientific and Technical Terms at 1809 (This dictionary defines "film" at page 753 as "[a] flat section of material that is extremely thin in comparison to its other dimensions and has a nominal maximum thickness of about 250 micrometers and a lower limit of thickness of about 25 micrometers."); "2. A broad, thin, [usually] rectangular piece of material, as paper, metal, glass, or wood. 3. A broad, flat, continuous surface or expanse <a sheet of ice>," Webster's at 1073; "Textiles. [A] large, rectangular piece of cotton, linen, or other material used as a bed covering. Materials. [A] similar broad, thin piece of some other material, such as paper, glass, or metal." Harcourt.

exclusively.  For thicker panels, sawed lumber often is used as the centre ply, or core, the product being called lumber-core plywood." The New Encyclopedia Britannica vol. 9 at 532 (1986).

The definitions indicate that "plywood" is composed of thin layers of wood glued together with the grains of adjacent layers at right angles.  Furthermore, the HTSUS specifies that each component layer may be no thicker than 6 mm.  Heading 4412, HTSUS, defines plywood as "consisting solely of sheets of wood, each ply not exceeding 6 mm. in thickness."  Heading 4408, HTSUS, covers "[v]eneer sheets and sheets for plywood (whether or not spliced) and other wood sawn lengthwise, sliced or peeled" and specifies that they may be "of a thickness not exceeding 6 mm."  In addition, the Explanatory Note for heading 4408, HTSUS, indicates that both veneer sheets and plywood sheets "may be spliced (i.e., taped, stitched or glued together edge to edge to make larger sheets for use in plywood and similar laminated wood.)."

The subject merchandise consists of layers of wood glued together with the grains of adjoining layers at right angles.  The hardwood top layer of the flooring and the bottom spruce layer are each approximately 1/8 inch or 3.175 mm. thick.[10]  The center layer of the flooring is approximately 1/4 inch or 6.35 mm. thick, exceeding the thickness limit of 6 mm. indicated by the HTSUS for

---

[10] To convert inches to millimeters, multiply the measurement in inches by 25.4.  See Terms of the Trade at 419 (charting metric conversions).

veneer or plywood sheets. As the center layer does not meet the thickness requirement for plywood sheets under the HTSUS, the flooring cannot be considered plywood.[11]

## B. The Subject Merchandise Is A Veneered Panel

The Explanatory Note for heading 4412, HTSUS, defines "veneered panels" as "panels consisting of a thin veneer of wood affixed to a base, usually of inferior wood, by glueing under pressure." Explanatory Notes at 633. The definitions cited above indicate that a "veneer" is a thin layer of wood (or other material) having a continuous surface and a uniform thickness, and which is extremely thin in relation to its breadth. See definitions of "veneer" and "sheet," supra note 9. Under the HTSUS, veneer is no thicker than 6 mm. and veneer sheets and plywood sheets "may be spliced (i.e., taped, stitched or glued together edge to edge to make larger sheets for use in plywood and similar laminated wood)." Explanatory Notes at 628.

"Panel" is defined as "[a] flat, usually rectangular piece forming a raised, recessed, or framed part of the surface in which it is set," The American Heritage Dictionary of the English Language 1307 (3rd ed. 1996); "[a] flat, [usually] rectangular piece

---

[11] As the measurements of the center layer of the subject merchandise determine that it cannot be classified as "plywood" under the HTSUS, the Court does not reach the issue of whether the center layer of the flooring could meet the definitions of "veneer" or "sheet."

forming a part of a surface in which it is set and being raised, recessed, or framed," Webster's at 849; "2. A sheet of material held in a frame. 3. A distinct, usually rectangular, raised or sunken part of a construction surface or a material," McGraw-Hill Dictionary of Scientific and Technical Terms at 1437; "Building Engineering. 1. [A] distinct section or portion of a wall, ceiling, door, or other construction surface, usually a flat, rectangular area that is raised above or sunk below the surrounding area. . . . Materials. [A] manufactured sheet of wood-based product that is available in standard sizes," Harcourt; "(1) a thin usually rectangular board set in a frame (as in a door) (2) a usually sunken or raised section of a surface set off by a margin (3) a flat usually rectangular piece of construction material (as plywood or precast masonry) made to form part of a surface," Merriam-Webster's Collegiate Dictionary, available at http://www.m-w.com; "[a] sheet of plywood, [oriented strand board], particleboard, or other similar product, usually of a standard size, such as 4x8 feet." Terms of the Trade at 239.

"Base" is defined as "1. The lowest or bottom part. 2. A supporting layer or part: foundation," Webster's at 155; "[f]oundation or part upon which an object or instrument rests," McGraw-Hill Dictionary of Scientific and Technical Terms at 195; "Engineering. [T]he lower part of a structure, especially one upon which an instrument rests or to which it is attached. Building Engineering. [T]he lowermost part of a wall or other building

member," Harcourt; "[t]he lowest member of anything," Corkhill, The Complete Dictionary of Wood at 30.

Applying the definitions and the Explanatory Notes for headings 4412 and 4408, HTSUS, a veneered panel consists of a layer of wood of uniform thickness of 6 mm. or less, which may be spliced or otherwise attached at the edges to make a larger piece, laminated onto a foundation of an inferior wood (or other material), and manufactured in flat, rectangular, distinct sections, most likely of a standardized size.

In the instant case, the hardwood top layer of the flooring meets the definition of veneer. The hardwood layer is made up of separate pieces of wood bonded together at the edges to form a continuous surface and has a constant thickness of approximately 3.175 mm. The veneer is bonded to a base of inferior softwood, which forms the foundation of the flooring.[12] See Pl.'s Mem. at 1-3; Dep. of Thomas L. Goss at 35-36; Def.'s Mem. at 13-14.

Determining whether the pieces of flooring constitute "panels" requires further analysis. The flooring pieces fit those

_____

[12] "Inferior" is a relative term, since different woods are suitable for different purposes. See generally Wood Handbook Ch. 1. Generally, softwoods offer less hardness and durability than hardwoods. See id. at 1-2; see also Dep. of Thomas L. Goss at 35-36. As hardness and durability are desirable qualities in flooring, softwoods may be considered inferior to hardwoods in the manufacture of flooring. See, e.g., Dep. of Thomas L. Goss at 35-36 (stating that a benefit of using hardwood as the top layer of flooring is its greater durability); World Floor Covering Association, at http://www.wfca.org (indicating in comparisons of different floor coverings that greater durability is a desirable quality).

definitions that describe a "panel" as a standardized, wood-based product used as a construction material.  See Harcourt; Terms of the Trade at 239; Merriam-Webster's Collegiate Dictionary.  The flooring pieces also meet the more general definitions of "panel" in that they are flat, rectangular, manufactured in distinct sections of a standard size, and form parts of a larger surface into which they are set.  However, the flooring may not meet the element found in some definitions that suggests that panels are raised, recessed, or framed.[13]

The term "panel" as used in the HTSUS, however, does not necessarily refer to "raised, recessed, or framed" portions of a surface.  The General Explanatory Notes to Chapter 44 discuss the classification of "building panels" used as "structural element[s] in roofing, wall or floor applications."  Explanatory Notes at 622.  The Explanatory Notes to heading 4418, HTSUS, explain that "cellular wood panels" are similar to blockboard and battenboard and are used in partitions, doors, and sometimes in furniture; these Explanatory Notes also discuss "parquet strips, etc., assembled into panels or tiles," which may be tongued and grooved to facilitate assembly.  Id. at 637.  The Explanatory Notes for heading 4412, HTSUS, use the term "panel" to discuss plywood,

---

[13] The Court does not decide whether flooring or any other wood product is raised, recessed, or framed.  Rather, the Court decides only that the term "panel" may be used to refer to materials that are not necessarily raised, recessed, or framed in their final applications.

veneered panels, blockboard, laminboard, battenboard, and parquet flooring.[14]   Id. at 632-33.   Plywood, blockboard, laminboard, and battenboard are commonly produced in distinct, standardized sections for use in carpentry and as structural materials in construction.  See, e.g., Caleb Hornbostel, Construction Materials: Types, Uses and Applications 955-61 (2d ed. 1991) (discussing the characteristics and uses of various types of plywood, including "construction and industrial plywood" used in structural applications.   The book refers to these products in terms of "panels."); Encyclopedia Brittanica, vol. 9 at 532 (stating that "[w]herever a material is required to cover large areas with a light but strong and rigid sheeting, plywood may be used; for example in cabinetmaking, for [furniture], in housebuilding, for walls, ceilings, floors, . . . in coachbuilding, for trucks, vans, and trailers, in shipbuilding . . . for shipping and storage chests and cases"); Food and Agriculture Organization of the United

---

[14] The Explanatory Note for heading 4412, HTSUS, states that in the case of plywood, placing the successive layers at right angles "gives the panels greater strength and . . . reduces warping."  Explanatory Notes at 632.  In discussing veneered panels, the Explanatory Note uses the term "panel" almost interchangeably with the term "base" in stating that "[w]ood veneered on to a base other than wood (e.g. panels of plastics) is also classified here . . . ."  Id. at 633.  Finally, in discussing similar laminated wood, the Explanatory Note describes blockboard, laminboard, and battenboard as having a thick core surfaced with outer plies, and states that "[p]anels of this kind are very rigid and strong and can be used without framing or backing."  Id.  Thus the term "panel" is used here to refer to construction materials that need not be "raised, recessed, or framed."

Nations, Unasylva: World Consultation on the Use of Wood in Housing: An International Review of Forestry and Forest Products, vol. 25, § 3, "Wood Products and Their Use in Construction," available at http://www.fao.org/docrep/c3848e/c3848e05.htm (stating that laminboard and blockboard are "used the same way in construction as thick plywood" and that "[t]heir major uses are in structural flooring, shelving, free-standing partitions and doors or sides in cabinets").  Many of these wood products would not be "raised, recessed, or framed" in the surfaces in which they are set.  Similarly, parquet flooring pieces are set together to form a floor, and need not be individually raised, recessed, or framed in relation to each other.

Finally, government, wood industry, and building sources and publications also indicate that the term "panel" may refer to building components that are not necessarily raised, recessed, or framed in their ultimate use.  See, e.g. Wood Handbook at 1-3 ("The most vigorously growing wood-based industries are those that . . . produce various types of engineered panels such as plywood, particleboard, strandboard, veneer lumber, paper, paperboard, and fiberboard products."), 10-1 (discussing use of wood composites in "structural and nonstructural applications in product lines ranging from panels for interior covering purposes to panels for exterior uses and in furniture and support structures in many different types of buildings"), 10-5 (listing plywood, oriented strandboard, particleboard, and other items as "frequently used panel products"

and stating that certain "wood-based panels can be used for construction applications such as sheathing for roofs, subflooring, and walls"), 10-6 (describing plywood, usable as a construction material, as "a flat panel"); APA, The Engineered Wood Association, Performance Rated Panels, at http://www.apawood.org (discussing performance standards for wood-based products such as plywood and oriented strandboard, referred to as "panels," in various construction applications); Francis D. K. Ching, Building Construction Illustrated 4.11, 12.5 (1991) (discussing characteristics and structural uses of "plywood panels" and other "wood panel products"); Food and Agriculture Organization of the United Nations, Yearbook of Forest Products, Definitions, available at http://www.fao.org/waicent/faostat/forestry/products.htm (categorizing plywood, including "core plywood" such as blockboard, laminboard, and battenboard, as "wood based panels"); United Nations Economic Commission for Europe, Timber Database, Forest and Forest Industries Country Fact Sheets, available at http://www.unece.org/trade/timber/tim-fact.htm (categorizing plywood, including core plywood such as blockboard, laminboard, and battenboard, as "wood based panels").

Thus, the term "panel" as used in heading 4412, HTSUS, and in the additional sources cited refers to engineered wood products manufactured in standardized sections for use as building and carpentry material.  Such panels would not necessarily be "raised, recessed, or framed."

Accordingly, we conclude that the subject merchandise is a "panel" as the term is used in the HTSUS. Each piece of flooring is manufactured in a standardized size and designed to be set into the larger surface as a section of a complete floor. See Boen Marketing Brochure, Bring the Beauty of Wood Inside, Collective Ex. A (describing each layer of Boen hardwood flooring as "5 1/2" wide and approximately 7' 2 5/8" long"); Boen Marketing Material, Transform Your World With Boen Hardwood, Collective Ex. A (stating that "[e]ach Boen Longstrip is 5 1/2" wide and approximately 7' 2 5/8" long" and that the standardized measurements, as well as the tonguing and grooving along the edges, result in easier installation).

Thus, the subject merchandise is a "veneered panel" within the meaning of heading 4412, HTSUS, and is properly classifiable thereunder.

_____
Donald C. Pogue
Judge


Dated:     February 25, 2002
           New York, New York